## UNITED STATES v. CRAWFORD.

Nos. 10489, 10490.

United States Court of Appeals Third Circuit.

Argued Jan. 10, 1952.

Decided April 3, 1952.

William Tomar, Camden, N. J., for appellant.

Alexander Feinberg, Asst. U. S. Atty., Newark, N. J. (Grover C. Richman, Jr., U. S. Atty., Newark, N. J., Stanley E. Rutkowski, Asst. U. S. Atty., Trenton, N. J., on the brief), for appellee.

Before GOODRICH and HASTIE, Circuit Judges, and BURNS, District Judge.

BURNS, District Judge.

Defendant has been found guilty on two separate indictments[1] charging him with knowing, unlawful, and felonious possession, in violation of 18 U.S.C. § 659, 18 U.S.C.A. § 659, of eleven 30-30 Marlin rifles, stolen from an interstate shipment and worth more than $100.00, and of a gabardine jacket, stolen from another interstate shipment and valued at less than $100.00. We hold that the conviction on each indictment was proper.

In the light of the jury verdict, we may summarize the facts established by the government substantially as follows: Under a uniform straight bill of lading, J. L. Galef & Son, Inc. delivered to Schupper Motor Lines, Inc., in New York, five cartons containing ten rifles each, for shipment to Sears, Roebuck & Co., in Philadelphia, Pennsylvania. The face of the invoice records the price of each rifle as $55.85, and the back thereof lists fifty numbers which were identified at the trial as the serial numbers of the rifles shipped. Four of the cartons were stolen in Pennsauken, New Jersey, by one Gilbert Cumberland. Shortly thereafter, the J. M. S. Mfg. Company delivered to Schupper Motor Lines, Inc., in New York, two cartons of cotton jackets

---

1. Defendant consenting thereto, the indictments were consolidated for trial.

for shipment to Sam Bobman, in Philadelphia, Pennsylvania. Cumberland also stole seven of these jackets in Pennsauken, New Jersey.

According to the evidence of the government, and contrary to the testimony of defendant, Cumberland, in a telephone conversation with defendant, told defendant that a shipment of rifles had arrived at the Schupper Pennsauken terminal, that "there was no way of checking back on them" because it had arrived without the bill of lading, and that he (Cumberland) had stolen the rifles; and Cumberland asked defendant whether defendant wanted to buy one. Defendant's answer was that he wanted a case; so Cumberland instructed defendant how to obtain entry into Cumberland's home, where the rifles were stored. Cumberland further testified that he had asked $15.00 per rifle, and that defendant had replied that "they were worth much more than that"; that, a few days thereafter, he visited defendant's home in Morrisville, Pennsylvania, where he and defendant examined one of the rifles, which had then been cleaned of the preservative, where Cumberland saw about eight of the individual cartons in which each rifle had been packed, and where defendant returned to him two of the rifles in cartons.[2] Cumberland also stated that, within one month of the events recited above, he had also stolen seven of the jackets consigned to Philadelphia, that he told defendant the jackets were stolen from the terminal, that defendant "said he wanted one", and that Cumberland later gave one to him at Cumberland's home.

There was other testimony tending to corroborate the evidence adduced from Cumberland. Defendant's brother-in-law, one Kemble, stated that defendant delivered a rifle to Kemble's home at about the time when Cumberland said defendant had acquired the rifles. Cumberland's wife, besides furnishing additional details concerning the occasion when her husband and defendant examined the cleaned rifle, which she insisted was one of the stolen rifles, further testified that, when she told defendant in a telephone conversation that her husband was in the office of a Lieutenant Dube "about the guns", defendant replied that Cumberland "should have got rid of the guns like I did by throwing them in the Delaware River."

Defendant here asserts that the testimony unequivocally fails to substantiate the conclusion that he had in his possession rifles identifiable as part of an interstate shipment. We cannot agree. From the testimony presented, the jury had an evidentiary basis for finding that fifty rifles were shipped from New York to Philadelphia, and four cartons containing ten rifles each were intercepted by Cumberland in New Jersey; that defendant took eleven of them from Cumberland's home and later returned two of them to Cumberland in their individual cartons; that other individual cartons were seen in his home; and that he disposed of some of those rifles at least by throwing them in the Delaware River. While the proof of the government would unquestionably have been stronger if the government had been able to produce one or more of the rifles at the trial, and thereby establish that they bore serial numbers which also appeared on the Galef invoice, we cannot say that the identification supplied was inadequate. See Petrilli v. United States, 8 Cir,. 1942, 129 F.2d 101, 103. Labelling of the cartons was adequate to prove the interstate character of the shipment,[3] and the presence of some of the rifles and individual cartons in his home constituted possession. Cf. United States v. Cordo, 2 Cir., 1951, 186 F.2d 144, certiorari denied, Minkoff v. U. S., 1951, 340 U.S. 952, 71 S.Ct. 572, 95 L.Ed. 686.

Defendant also urges that there was no proof as to the value of the rifles. The face of the invoice, however, to the

---

2. Cumberland's testimony was that he had a sale for at least three rifles, but that defendant was willing to surrender only two "because he was negotiating for the sale of the rest of them." According to Cumberland, defendant took eleven rifles from Cumberland's home.

3. Each shipping carton carried the name and address of the consignor and consignee.

admission of which defendant did not object,[4] affirmatively shows the price of each Marlin 30-30 rifle to have been $55.85, and Cumberland testified that defendant said the rifles "were worth much more than" $15.00 each. Even if the individual cartons seen in defendant's room were empty, therefore, the three actually seen—the cleaned rifle and the two returned to Cumberland— establish possession of stolen rifles worth more than $100.00, and, in view of this fact, it was not necessary for the government to prove that defendant did actually have in his possession as many as eleven of the stolen rifles. Rule 52, Federal Rules of Criminal Procedure, 18 U.S.C.A.; and see United States v. Wodiska, 2 Cir., 1945, 147 F.2d 38, 39.

■ Defendant has made similar contentions concerning the possession of the jacket and its value. We need not reiterate the legal precepts already enunciated in this opinion. There was an evidentiary foundation for the finding that Cumberland gave defendant a jacket which defendant knew had been stolen in New Jersey from a shipment enroute from New York to Philadelphia. Testimony concerning the market value of the jacket was unnecessary, since the jacket did have some value and since neither the indictment nor the proof sought to assert a valuation in excess of $100.00, which sum was the minimum for invoking the greater statutory penalty.

■ Finally, defendant asserts that, in its charge to the jury, the lower court deviated from the "reasonable doubt" rule when it stated that the jury was to return a verdict of guilty if the jury was "satisfied" that the government had proved the facts essential to conviction. To that portion of the charge counsel for defendant took due exception. Reading the charge as a whole, however, we believe that the trial judge did properly outline the requirement that the proof of the government had to be beyond a reasonable doubt, and that the jury was aware of the quantum of proof needed, particularly since the court introduced

the challenged remarks with the clause "* * * and you will deliberate under the rules I have laid down." A not dissimilar comment by a trial judge was held not to be reversible error in Moffitt v. United States, 10 Cir., 1946, 154 F.2d 402, 405, certiorari denied, 1946, 328 U.S. 853, 66 S. Ct. 1343, 90 L.Ed. 1625; and we here reach the same conclusion.

Accordingly, the judgments of the district court will be affirmed.

4. Counsel for defendant stated: "I have no objection to the front page of [the invoice], but I do object to what is on the back of the paper [i.e., the numbers of the rifles]."