**UNITED STATES of America, Plaintiff-Appellee,**

v.

**William COLLIER, Defendant-Appellant.**

**No. 15185.**

United States Court of Appeals Seventh Circuit.

June 15, 1966.

Rehearing Denied July 13, 1966.

Howard T. Savage, R. Eugene Pincham, Chicago, Ill., William Collier, Sam Adam, Chicago, Ill., of counsel, for appellant.

Edward V. Hanrahan, U. S. Atty., John Peter Lulinski, John Powers Crowley, Joseph A. Lamendella, Asst. U. S. Attys., Chicago, Ill., Lawrence Jay Weiner, Asst. U. S. Atty., of counsel, for appellee.

Before HASTINGS, Chief Judge, and CASTLE and KILEY, Circuit Judges.

KILEY, Circuit Judge.

Defendant Collier appeals from the judgment, on a verdict, convicting him of a violation of 21 U.S.C. § 174, as amended by the Narcotic Control Act of 1956. We affirm.

Collier was indicted December 22, 1960, for the offense on December 12, 1960, of unlawfully receiving, concealing and facilitating the transportation and concealment of heroin. The present appeal is from his second conviction under the

same indictment. His first conviction was reversed by this court for errors at the trial, United States v. Collier, 313 F.2d 157 (7th Cir. 1963). The second trial and the conviction before us followed in December, 1964.

About 9:50 p. m., December 11, 1960, Bedford, a government informer, after meeting with government agents, met Collier and talked with him under surveillance of the agents, in front of the Irving Hotel in Chicago. About 12:20 a. m. December 12, Bedford talked with the agents, and shortly thereafter Collier drove up to the hotel. When the agents drove up behind Collier, he drove away. They pursued him and in the chase Collier shook white powder from an aluminum packet out of the car window. The agents curbed Collier's car, arrested him, and found heroin in the aluminum packet, on his clothes, and on the seat of the car.

■ Collier's defense was entrapment. He contends here that the evidence for him and for the government establishes entrapment as a matter of law. In our opinion on the first appeal, we decided that the question of entrapment was for the jury. 313 F.2d at 158. But Collier contends additional facts not present in the first trial were adduced in the trial now before us. This is true since government informer Bedford was not a witness at the original trial, but was a principal witness at this second trial.

The vital question in the entrapment defense theory here is whether the jury believed testimony of Collier that his possession of narcotics at the time of his arrest was induced by the withdrawal sickness of Bedford and the latter's persistent importuning of Collier to help Bedford get needed drugs which he could not get himself because of a rumor in the market that Bedford was an informer. In other words, Collier was a good Samaritan messenger in aid of a very sick acquaintance. This role of his in the drama, according to Collier, is supported by his testimony and that of the agents and of Bedford.

There was evidence at the trial that Bedford was an addict at the time, that he needed drugs, that he induced Collier to get the drugs, and that he was an informer for whom the government had had a state narcotics case against him dismissed in January of 1961. But this does not answer the vital question, which is whether Collier was merely a good Samaritan messenger instead of a broker in the market. The answer was found, as it had to be, in the conversations between Bedford and Collier and the latter's predisposition, if any, to obtain and sell, for a price, to Bedford the heroin which Collier possessed when arrested. In the testimony of both there is some conflict, some contradiction, some equivocation. We cannot say the jury's conclusion about Collier's conduct was not proper, based on who the jury believed said what.

The testimony of the agents shed no light on this vital question in itself. Their testimony was largely with respect to their dealing with their informer Bedford and the chase and arrest of Collier. Their rebuttal testimony as to Collier's admission that his source of narcotics was one Marvin Moses was damaging to Collier. He had denied on cross-examination that he made the admission, insisting to the contrary that he obtained the narcotics from a Little Tommy to whom Bedford directed him.

We hold entrapment was not shown as a matter of law.

Collier claims that conduct of certain jurors denied him a fair and impartial trial by openly discussing the case and expressing opinions about defendant's guilt.

During the trial one of the jurors was excused from service because of a death in the family. The parties agreed that the first alternative juror be substituted for the regular juror. Collier's attorney then stated to the court that a spectator [the defendant's wife] had represented to him that the previous day, while court and counsel were in chambers, the first alternate had made some comment regarding the case. He requested the use of the second alternate instead of the first, indicating he would not have brought the matter up at all had it not become neces-

sary to use one of the alternate jurors. The government was agreeable to this. The court held a hearing outside the jury's presence, at which Collier's wife testified, under court questioning, to what "seemed to have been" a bet between the first alternate and another juror with respect to what Bedford would look like when he appeared. She also said she overheard the alternate express a view to another juror about Collier's guilt.[1] The alternate juror was questioned by the court about the "bet"; he admitted—not a bet with money involved—but a short conversation, to pass the time away, concerning what Bedford would look like. He was excused, and the second alternate substituted.

The jury was then told by the court that the first alternate had been excused for not following the court's advice. The court emphasized to the jurors that they were not to discuss among themselves "any facet" of the case until they were sent to the jury room to deliberate upon the case. The court then, out of the presence of the jury, heard and denied Collier's attorney's motion for a mistrial because of the "discussion of the case among the jurors." The court thought, and we agree, that Collier's right to a fair trial had not been prejudiced by the incident, but in fact had been better served, indeed "emphasized," by the incident.

■■ We conclude that, despite the fact that the first alternate was not questioned about Collier's wife's testimony of the first alternate's comment about Collier's "guilt," the court had cured whatever prejudice had occurred if the comment was made. If Collier's attorney thought his client had been prejudiced by the failure of the court to question the alternate about the claimed comment, he

should have raised the point in the trial court at the time of the questioning, and not at this time in this court. There is no basis for the argument in Collier's brief that after the first alternate was excused "at least one juror" still remained who expressed an opinion about Collier's guilt.

■ The contention is frivolous that defendant was denied his constitutional rights to confrontation with, and full cross-examination of, witnesses against him, and compulsory process for witnesses in his behalf, because of claimed "testimonial comment" by the trial judge which "buttressed and corroborated Bedford's testimony."[2] This claim arises from testimony by witnesses about the government's inducing a dismissal of the narcotics case against Bedford in the Criminal Court of Cook County. Bedford testified several times that he did not see the agents in that court or hear what they said there. There was no issue as to whether the case was dismissed as compensation for informing, and the question directed to Bedford about his failure to see the agents was repetitious and unnecessary. We see no prejudicial error in the court's ruling sustaining the objection nor in the court's stated reason for the ruling.

■ We see no prejudicial error either in the court's refusing to order Bedford, a court's witness, to answer questions asked by Collier's attorney in the face of Bedford's persistent invocation, upon advice of his attorney, of his fifth amendment right not to incriminate himself, and in limiting cross-examination. Bedford refused to answer, among other things, where he was living December 11, 1960, and whether the narcotics

1. Mrs. Collier testified:
    Then this particular party, getting back to another—you know, naturally everything I didn't hear, but getting back to the issue that possibly he speaking out, this particular party on the end was saying, "Perhaps he will be found guilty," and the young lady sitting next to him said, "Well, guilty of what?"

He says, "Well, the only way he could plead would be guilty." She said, "Of what?"
    I was saying, "Well, honestly, they don't seem to know what is going on."

2. Brief for Defendant-Appellant, p. 49.

he had been convicted of possessing[3] were seized from a certain apartment at 8118 South Ellis Avenue. The answers admittedly might connect him with possession of narcotics seized at that location and incriminate him in a state conviction. And that he was living at that place could have been, and was, shown by other testimony. The court refused to order Bedford, over his claim of fifth amendment right, to answer the government question whether he had purchased drugs from Collier prior to December 11. Collier claims prejudice in the inference available to the jury from Bedford's failure to answer. There is no claim that Bedford could not properly invoke his fifth amendment right, and we see no prejudice on this record.[4] The limit in cross-examination of Bedford (regarding various indictments pending against him for unlawful possession of narcotics long after the time involved in this case) was within the court's discretion and no abuse has been shown.

■ Nor is there merit in the contention that Collier was denied his constitutional right to a speedy trial. This court's mandate reversing Collier's first conviction and remanding the case for retrial was filed June 26, 1963. On July 8, 1963, Collier moved for production of Bedford. On September 30, the court ordered the government to assist in producing him. On October 21, 1963, the court continued the motion to produce Bedford to the time of trial. In early December of 1963, the case was called for trial and the court held a hearing on defendant's motion that the government produce Bedford; the court found that he was a necessary witness but that his whereabouts were unknown. It appears that Collier was free on his own recognizance bond after December, 1963. Continuances were ordered until Bedford was found and produced in November, 1964. Trial followed in December, 1964. It is obvious that there is no merit to the contention that Collier's right to speedy trial was denied by the government's conduct to Collier's prejudice; significantly, all defendant points to is the lapse of time itself, due to Bedford having jumped bail and disappeared.

■ Finally, the claims that Collier's trial was prejudiced by the district court's reference to the earlier proceedings before this court, and that Collier was twice placed in jeopardy, are without substance. The district court was merely straightening out a dispute between attorneys during jury argument as to who was vouching for Bedford as a witness. The court stated that Bedford was the court's witness "as a result of the prior proceedings on the hearing before the Court of Appeals," and on the court's own determination. In the context of this trial record we see no prejudice. On December 4, 1963, the court called for a jury, and prospective jurors were sworn to an-

---

3. A state narcotics inspector had testified as a defense witness that Bedford was convicted for this offense in February of 1962; after being admitted to bail pending appeal of this conviction, Bedford jumped bail, forfeited the bail, and remained at liberty until about October, 1964.

4. The Supreme Court has noted that none of the federal cases suggest that reversible error is invariably committed whenever a witness claims his privilege not to answer. Namet v. United States, 373 U.S. 179, 186, 83 S.Ct. 1151, 10 L.Ed.2d 278 (1963). The court in Fletcher v. United States, 118 U.S.App.D.C. 137, 332 F.2d 724, 726 (1964), pointed out that the Court in *Namet*, 373 U.S. at 186–187, 83 S.Ct. at 1154–1155, noted that the federal courts: ' * * * have looked to the surrounding circumstances in each case, focusing primarily on two factors, each of which suggests a distinct ground of error.' One of these grounds relates to prosecutorial misconduct, and the other 'seems to rest upon the conclusion that, in the circumstances of a given case, inferences from a witness' refusal to answer added critical weight to the prosecution's case in a form not subject to cross-examination, and thus unfairly prejudiced the defendant.' [Footnotes omitted.] Neither of these grounds is present in this case. We must also point out that Bedford was not called by the government, but rather as a court's witness; the defendant himself seeks to rely on some of Bedford's testimony to establish his defense of entrapment.

swer questions. But no jury was sworn. The next day the hearing on Collier's motion to produce was had, the cause continued and the panel of veniremen discharged. This event was actually in furtherance of relief sought by Collier and is a far cry from the facts in Downum v. United States, 372 U.S. 734, 83 S.Ct. 1033, 10 L.Ed.2d 100 (1963), relied on by Collier.

Affirmed.

Schnackenberg, Circuit Judge, dissented in part.