UNITED STATES of America,
Plaintiff-Appellee,

v.

Phillip L. ROGERS, Defendant-Appellant.

UNITED STATES of America,
Plaintiff-Appellee,

v.

Charles SPOTTS, Defendant-Appellant.

Nos. 72–1305, 72–1306.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 28, 1972.

Decided March 7, 1973.

See also, D.C., 329 F.Supp. 327.

———◆———

Darryl K. Nevers, Wauwatosa, Wis., Robert J. Lerner, Milwaukee, Wis., for defendants-appellants.

David J. Cannon, U. S. Atty., David B. Bukey, Asst. U. S. Atty., Milwaukee, Wis., for plaintiff-appellee.

Before DUFFY, Senior Circuit Judge, CAMPBELL, Senior District Judge,* and ESCHBACH, District Judge.* *

ESCHBACH, District Judge.

Defendants-appellants, along with a defendant, Jackson, subsequently acquitted, were charged in a twelve-count indictment with causing falsely made and forged securities (twelve money orders) to be transported in interstate commerce with fraudulent intent in violation of 18 U.S.C. §§ 2, 2314. Rogers was charged in Counts I through XI, and Spotts was charged in Counts I through VI as well as in Counts VIII and XII (Jackson was named in Counts IX through XI). Following submission of all the evidence in a joint jury trial, the trial court directed a verdict for defendants on Counts IX through XII for failure of the Government as a matter of law to prove as to these counts interstate movement of the

---

\* Senior District Judge William J. Campbell of the Northern District of Illinois is sitting by designation.

\*\* District Judge Jesse E. Eschbach of the Northern District of Indiana is sitting by designation.

money orders. On the remaining counts, the jury found the defendants guilty as charged. Each defendant was sentenced to thirty months imprisonment on each such count, the sentences to be served concurrently. Both Spotts and Rogers appeal from their convictions, which appeals were separately briefed and argued. Since these appeals result from a common trial and in part raise common questions, we will dispose of them in a single opinion. We affirm the convictions of both appellants.

Both appellants claim that as a matter of law the Government has failed to prove the interstate transportation of the money orders relating to the counts on which they were convicted. Rogers additionally argues that the trial court erred in ordering Rogers to execute handwriting exemplars in the form of the allegedly forged words on the money orders and that the trial court erred in refusing to strike in its entirety the testimony of a key Government witness when she exercised her Fifth Amendment right not to answer certain questions. Spotts additionally argues that the trial court erred in not severing Count XII and that the evidence as a whole is insufficient to convict him.

## I. *Proof of Interstate Movement of the Money Orders*

■ The jury could reasonably have found the money orders identified in Counts I through VIII were genuine American Express money orders distributed by American Express to Sears, Roebuck & Co., Milwaukee, Wisconsin. The money orders were discovered to be missing from that store sometime in early October 1970, and they were forged and cashed in Wisconsin in October 1970. The defendants argue that, assuming the Government has sufficiently tied them to these encashments, still they should have been acquitted because the Government did not present evidence from which a jury could conclude beyond a reasonable doubt that these very money orders in fact moved in interstate commerce. It is clear that such proof is necessary to sustain defendant's convictions. Gilinsky v. United States, 368 F.2d 487 (9th Cir. 1966). For its proof, the Government relied solely upon the documents themselves and the markings thereon. On the face of each money order was printed "American Express Company agrees to pay at 65 Broadway, New York, N.Y., the sum of. . . ." On the back of each was printed "AMERICAN EXPRESS COMPANY RESERVES THE RIGHT TO REFUSE PAYMENT OR CHARGE BACK THIS MONEY ORDER IF IT IS RAISED, ALTERED OR STOLEN OR IF ANY SIGNATURE IS OMITTED OR FORGED." Also on the back of the orders was stamped "PRESENTED FOR AMEXCO N.Y. PAYMENT." Defendants argue that this real evidence is insufficient to support an inference of interstate movement of these money orders and that, in any event, these markings are inadmissible hearsay.

■ We are persuaded that the markings, any one of which might not be sufficient standing alone, taken together are sufficient to support a reasonable inference of interstate movement. The documents speak for themselves. The second quoted statement above shows that American Express Company decides whether to pay on money orders written on its paper. The first quoted statement shows that this decision is made in New York City. The third quoted statement reflects that these particular money orders were presented in New York for that decision.

Directly on point is United States v. Nelson, 273 F.2d 459 (7th Cir. 1960). In that case, the court, in considering a related issue, commented upon the use and meaning of documents and markings similar to those here at issue.

Each of the money orders bears the printed legend: "American Express Company, New York, New York, agrees to transmit and pay." In our opinion this clearly indicated that the securities were payable at the American Express Company, in New York, New York. . . .

The money orders are each stamped "Paid, with an appropriate date inserted, AMEXCO, N.Y." . . . The documents speak for themselves. They show that they were in fact paid at the American Express Company in New York, as abbreviated: "AMEXCO, N.Y.", or "MEXCO, N.Y." *Id.* at 460–461.

In short, the court held that the documents, without oral elaboration, had discernible meaning in their own right, namely, that payment was to be made, and in fact was made, in New York. While it is true that the court referred to expert testimony of an American Express agent regarding the stamp on the back, the court in interpreting the words on the front relied solely upon the printed words. In light of this interpretation, there is no reason to suspect that the court meant anything less than what it said about the stamped words, which is that they speak for themselves. In the similar case of United States v. Mustin, 369 F.2d 626 (7th Cir. 1966), this court, in holding that a check and a photostat thereof by an out-of-state bank supported an inference of interstate movement, described such expert testimony as proper but cumulative. *See also* United States v. Cordo, 186 F.2d 144, 146 (2d Cir.), cert. den., Minkoff v. United States, 340 U.S. 952, 71 S.Ct. 572, 95 L.Ed. 686 (1951) (charge of theft from interstate commerce). The court said, "The asserted lack of evidence to prove the interstate character of the goods when stolen fails in the light of the proof that the cartons and bales were each plainly labelled with the names of the North Carolina consignor and the New York consignee." *See also* United States v. Crawford, 195 F.2d 472, 474 (3d Cir. 1952) (Labelling on the cartons adequately proved interstate character of the shipment). *Cf.* United States v. Palumbo, 317 F.2d 607 (2d Cir. 1963)

(value of goods stolen proven by amount inserted on invoice).

■ Defendant cites the recent decision in United States v. Coleman, Case No. 68–CR–33 (E.D.Wis., July 30, 1968) (oral opinion). That case is distinguishable, however, as being a bench trial in which the judge was sitting as trier of fact and in that capacity found the Government's evidence insufficient. In the instant case, the jury was the fact finder, and it found the evidence sufficient. Our function on appeal is not to make our own findings of fact, but to determine whether there was sufficient evidence in the record to support the fact finder's conclusion, and in this case there was.

■ Defendant Rogers, in addition to making an argument of logical insufficiency, now complains that the markings quoted above are inadmissible hearsay. However, at trial he made no such specific objection,[1] as was done in *Crawford, supra,* 195 F.2d at 475 n. 4, nor did he otherwise seek to limit the purposes for which the money orders were admitted, such as was done in United States v. Whitlow, 339 F.2d 975, 980 (7th Cir. 1964). Moreover, the Government did not lead him to believe that further evidence would be forthcoming on the question of interstate movement of the documents. Hence, Rogers has waived his hearsay objection. Diaz v. United States, 223 U.S. 442, 450, 32 S.Ct. 250, 252, 56 L.Ed. 500 (1912); Gibson v. Elgin, Joliet & Eastern Railway Co., 246 F.2d 834, 836 (7th Cir.) (relying upon *Diaz*), cert. den., 355 U.S. 897, 78 S.Ct. 270, 2 L.Ed.2d 193 (1957); American Rubber Products Corp. v. NLRB, 214 F.2d 47, 51–52 (7th Cir. 1954) (relying upon *Diaz*); United States v. Rosenberg, 195 F.2d 583, 596 (2d Cir.), cert. den., 344 U.S. 838, 73 S.Ct. 20, 97 L.Ed. 652 (1952).

1. Rogers made no objection when the money orders supporting Counts I and II were admitted into evidence. As to the money orders named in Count III through VIII, he made no objection regarding the printing and stamp on the back, and he only objected in vague terms to "some extraneous matter written on the *front* of the money orders." (Emphasis added)

## II. *Handwriting Exemplars*

■ After indictment, but before trial, the Government sought a court order requiring that defendant Rogers execute examples of his handwriting. The court so ordered, and Rogers agreed to give examples in any form except the names and addresses used on the forged documents. The Government then moved in open court, with supporting affidavits, that Rogers be compelled to execute exemplars in the form objected to by Rogers. The court so ordered and Rogers complied. Rogers then sought an order suppressing use of those exemplars at trial, which motion the court denied. Apparently Rogers did not renew his objection when the exemplars were used at trial, although he reasserts the claim on appeal. Defendant by his actions has not waived his right to raise on appeal his pretrial objection. *Whitlow, supra.*

■ Rogers does not appear to argue that *no* exemplar constitutionally could be required of him, and it is clear that such argument could not succeed. No question of right to counsel is raised in this case, and a general Fifth Amendment attack is answered by the Supreme Court's ruling in Gilbert v. California, 388 U.S. 263, 266–267, 87 S.Ct. 1951, 1953, 18 L.Ed.2d 1178 (1967): "[A] mere handwriting exemplar, in contrast to the content of what is written, like the voice or body itself, is an identifying physical characteristic outside [the Fifth Amendment's] protection." As for Fourth Amendment rights, the Supreme Court has recently held that handwriting exemplars taken alone are outside the scope of the Fourth Amendment's protection because a person has no reasonable expectation of privacy regarding his handwriting. United States v. Mara, 410 U.S. 19, 93 S.Ct. 774, 35 L.Ed.2d 99 (1973), rev'g, 454 F.2d 580 (7th Cir. 1971). *See also* United States v. Dionisio, 410 U.S. 1, 93 S.Ct. 764, 35 L.Ed. 2d 67 (1973), rev'g in part, aff'g in part, 442 F.2d 276 (7th Cir. 1971).[2] Moreover, there is no suggestion in the record that the exemplars were the fruit of an independently illegal seizure such as that in Davis v. Mississsppi, 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969).

■ The appellant's argument that it was error for the trial court to require that exemplars be in the form of allegedly forged words also has been answered by the Supreme Court and is without merit. In *Dionisio*, the defendant was ordered by the district court to give a voice exemplar in the exact words of a telephone conversation taped by the Government. The Court found this constitutional, stating:

It has long been held that the compelled display of identifiable physical characteristics infringes no interest protected by the privilege against compulsory self-incrimination. . . . "[T]he prohibition of compelling a man in a criminal court to be witness against himself is a prohibition of the use of physical or moral compulsion to extort communications from him, not an exclusion of his body as evidence when it may be material."

. . . . . . . *Wade* (United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed. 2d 1149 (1967)) and *Gilbert* definitively refute any contention that the compelled production of the voice ex-

---

2. On their facts *Mara* and *Dionisio* are limited to actions by a grand jury. However, the language of the Court was broad:

 Handwriting, like speech is repeatedly shown to the public, and there is no more expectation of privacy in the physical characteristics of a person's script than there is in the tone of his voice. *Mara, supra* at 21 of 410 U.S., 93 S. Ct. 774.

 In Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), we said that the Fourth Amendment provides no protection for what "a person knowingly exposes to the public, even in his home or office. . . ." 389 U.S. 347, 351, 88 S.Ct. 507, 511. *Dionisio, supra* at 14 of 410 U.S., 93 S. Ct. 764.

 In any event, the facts in this case satisfy any possibly applicable Fourth Amendment standards. Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908.

emplars in this case would violate the Fifth Amendment. The voice recordings were to be used solely to measure the physical properties of the witnesses' voices, not for the testimonial or communicative content of what was to be said. *Id.*, at 5 of 410 U.S., 93 S.Ct. at 767, quoting Holt v. United States, 218 U.S. 245, 252, 31 S.Ct. 2, 6, 54 L.Ed. 1021 (1910).

The present case is indistinguishable from *Dionisio* on legal grounds. While *Dionisio* dealt with voice exemplars and the exemplars in the instant case are handwritten, the Court in *Dionisio*, as in the other leading cases on point (*Mara, Gilbert, Wade*), dealt with such exemplars interchangeably and without constitutional differentiation.[3] Moreover, in the instant case the exemplars were to be used only as a standard of comparison, and the trial transcript shows that both prosecutor and handwriting expert strictly limited themselves to such use.

■■ Defendant argues on nonconstitutional grounds that the exemplar ordered was unduly prejudicial at trial. However, it is the trial court's duty to weigh the potential prejudice from overemphasis against the usefulness of the exemplars for handwriting analysis. We cannot say that the trial court abused its discretion. *Cf.* United States v. Izzi, 427 F.2d 293, 295 (2d Cir.), cert. den., 399 U.S. 928, 90 S.Ct. 2244, 26 L.Ed.2d 794 (1970); Fountain v. United States, 384 F.2d 624, 632 (5th Cir. 1967), cert. den., Marshall v. United States, 390 U.S. 1005, 88 S.Ct. 1246, 20 L.Ed.2d 105 (1968); United States v. Vignera, 307 F.Supp. 136 (S.D.N.Y.1969).

### III. *Witness Knauf's Refusal To Answer Certain Questions*

A key witness for the Government was Karen Knauf a co-participant in the crimes charged. It was she who actually passed the forged money orders. She testified that Rogers, along with Spotts, planned where and when she would cash checks and that she saw Rogers forge several of the money orders. During cross-examination, she refused to answer certain questions on the grounds that the answers might tend to incriminate her: while testifying that she loved a certain Stanley Hall, whom she identified as also being involved in the crimes charged, and that she did many things for him, she refused to say whether she had lived with him. Also, while admitting that she was using drugs during the period in which she cashed the money orders, she refused to say which drugs she used, how extensively she used them, and who supplied them. At trial, Rogers objected that these refusals to answer questions so effectively denied him his right to cross-examine the witness regarding her credibility generally and her powers to observe that her entire testimony on direct examination should be stricken. On appeal, Rogers presses only one point. He argues that while the witness was within her rights in refusing to answer questions directed to her drug use, by her so doing Rogers was precluded from establishing that the witness' ability to observe and remember the events about which she testified was impaired. *See* Wilson v. United States, 232 U.S. 563, 568, 34 S.Ct. 347, 349, 58 L.Ed. 728 (1914). Rogers contends such ability goes to the

---

3. As stated, the *Dionisio* case arises in the setting of a grand jury hearing, while in the instant case questions relate in part to activities at trial. There is language in *Wade* which suggests that a trial setting raises separate questions. (In *Wade*, the defendant was made at a line-up to speak words used by a robber.) However, it appears that in *Wade* the jury was made aware of the defendant's exemplar. More-

over, the Court in *Dionisio* referred to *Gilbert* as being exactly on point, and in *Gilbert* the exemplars were clearly used at trial. In short, it is not constitutionally significant whether the words of an exemplar are in terms related or unrelated to the particular case or used at trial so long as the exemplar is treated solely as a standard of comparison.

reliability of the witness' entire direct testimony.

A witness' refusal on Fifth Amendment grounds to answer otherwise permissible questions may, but need not necessarily, violate the defendant's Sixth Amendment right as to part or all of the witness' testimony. United States v. Collier, 362 F.2d 135 (7th Cir.), cert. den., 385 U.S. 779, 87 S.Ct. 519, 17 L.Ed. 2d 439 (1966); United States v. Cardillo, 316 F.2d 606 (2d Cir.), cert. den., 375 U.S. 822, 84 S.Ct. 60, 11 L.Ed.2d 55 (1963). *See also* Smith v. Illinois, 390 U.S. 129, 133 n. 8, 88 S.Ct. 748, 751, 19 L.Ed.2d 956 (1968); United States v. Saletko, 452 F.2d 193, 195–196, cert. den., 405 U.S. 1040, 92 S.Ct. 1311, 31 L.Ed.2d 581 (1972). The basis for determining whether a defendant's Sixth Amendment right was violated has been stated as follows:

> The ultimate inquiry is whether the defendant has been deprived of his right to test the truth of the direct testimony. . . . The distinction is generally drawn between invoking the privilege as to "collateral matters," not requiring the striking of direct testimony, and invoking it as to "direct" matters. . . . But the line between "direct" and "collateral" is not clear, and the question in each case must finally be whether defendant's inability to make the inquiry created a substantial danger of prejudice by depriving him of the ability to test the truth of the witness's direct testimony. *Fountain, supra,* at 384 F.2d 628.

Such a judgment is to be made upon the whole record, and, on the record in the instant case, we conclude that Rogers' right to cross-examination was not so limited as to warrant striking Knauf's testimony. In general terms, the truthfulness of Knauf's testimony, including her ability to observe and remember events, was broadly and incisively attacked in depth by three attorneys, and the witness' "refusal to answer [did not add] critical weight to the prosecution's case in a form not subject to cross-exam-

ination. . . ." *Collier, supra* 362 F.2d at 139 n. 4, quoting Fletcher v. United States, 118 U.S.App.D.C. 137, 332 F.2d 724, 726 (1964). More specifically, as the trial court stressed, the witness was not testifying as to a single brief occurrence for which her powers of precise observation would be specially important. Rather, she testified about a series of meetings and transactions occurring over a period of two months with individuals well known to her. Moreover, in testifying about these events, the witness generally limited herself to readily observable elements thereof; she rarely testified about elements, such as particular statements by Rogers, which would require a particularly accurate memory. Finally, the witness' testimony as to Rogers, who alone of the defendants asserts that his right to cross-examination was too limited, was strongly supported by the testimony of the handwriting expert that Rogers forged the money orders identified in Counts I through VIII.

## IV. *Severance of Count XII*

In Count XII, defendant Spotts alone was charged, and the evidence of his involvement regarding that particular money order was strong and direct. Knauf testified that Spotts supplied her with the false ID used in the encashment and that he accompanied her in the car when she went to cash the money order. The handwriting expert testified that in his opinion the writing on the order was Spotts'. The trial court ultimately directed a verdict in Spotts' favor on this count because the Government failed to prove interstate movement of the money order. Before trial, Spotts moved for severance of Counts IX through XII, and he now asserts it was error for the trial court not to have severed Count XII (Spotts was not charged in Counts IX through XI). Admitting joinder was proper, Spots claims there was prejudice requiring severance in that the strong evidence on Count XII quite probably would be relied upon by the jury in convicting Spotts on Counts I through

VI and VIII, for which the Government's evidence was much weaker, even though in a separate trial of Counts I through VIII the evidence on Count XII would have been inadmissible. There is no merit in defendant's contention.

The trial court found joinder of defendants and counts proper under Rule 8(b), Fed.R.Crim.P., because the offenses charged appeared to be "closely related in time and manner so as to show a connection\between them" and a " 'series' of transactions which were part of a common plan." Decision and Order, p. 2, filed June 21, 1971. Spotts does not attack this decision, nor could he. *See* United States v. Scott, 413 F.2d 932 (7th Cir. 1969), cert. den., 396 U.S. 1006, 90 S.Ct. 560, 24 L.Ed.2d 498 (1970); United States v. Spector, 326 F.2d 345, 349–351 (7th Cir. 1963); United States v. Thomas Apothecary, Inc., 266 F.Supp. 890, 892 (S.D.N.Y.1967). Moreover Spotts does not assert that evidence at trial failed to support the court's initial finding.

Joinder being proper, this court will reverse the trial court only if abuse of discretion is shown. United States v. Kahn, 381 F.2d 824, 838 (7th Cir.), cert. den., 389 U.S. 1015, 88 S.Ct. 591, 19 L.Ed.2d 661 (1967). The trial court is to balance possible prejudice to the defendant from joinder with the public interest in efficient use of judicial time through joint trial of defendants and offenses which are connected. In a case of multiple defendants, as the instant one, the showing needed for severance appears to be stronger than in a case of a single defendant with multiple counts. *See* Wright and Miller, Federal Practice and Procedure § 223 (1969). By any standard, however, Spotts has failed to show error on the part of the trial court. First, the record before the trial court at the time of Spotts' pretrial motion for severance (Spotts did not renew the motion at trial) falls far short of showing sufficient prejudice to Spotts to require severance. Spotts himself relies upon evidence brought forth after the motion, including important testimony at trial. It is clear, then, though this is not necessarily dispositive of defendant's claim, that defendant's motion for severance was properly denied when made. *See* United States v. Haupt, 136 F.2d 661, 673–674 (7 Cir. 1943) (no error in denying motion for severance, but upon hearing all the evidence, it was error not to grant the motion for a new trial). Secondly, a showing of differential proof as to counts is not per se a sufficient showing requiring severance or a new trial. Schaffer v. United States, 362 U.S. 511, 80 S.Ct. 945, 4 L.Ed. 2d 921 (1960); United States v. Sherman, 84 F.Supp. 130 (E.D.N.Y.1947), aff'd in part, rev'd in part on other grounds, 171 F.2d 619 (2d Cir. 1948). Thirdly, prejudice requiring severance is not shown if evidence on the severed count would be admissible in the trial of the remaining counts, Drew v. United States, 118 U.S.App.D.C. 11, 331 F.2d 85, 91 (1964). Here, the trial court in its discretion could admit evidence regarding Count XII against Spotts in a trial on Counts I through VIII, not to show mere disposition to commit crime, but to show a common scheme of which both charged and non-charged activity is a part. *See* United States v. Birrell, 447 F.2d 1168, 1172–1173 (2d Cir. 1971), cert. den., 404 U.S. 1025, 92 S.Ct. 675, 30 L.Ed.2d 675 (1972) (count dismissed for failure to prove interstate aspect of case; evidence thereon nevertheless admissible); United States v. Weber, 437 F.2d 327, 332 (3d Cir. 1970), cert. den., 402 U.S. 932, 91 S.Ct. 1524, 28 L.Ed.2d 867 (1971); Bradley v. United States, 140 U.S.App.D.C. 7, 433 F.2d 1113, 1117–1121 (1969). *Cf.* United States v. Bucciferro, 274 F.2d 540 (7th Cir.), cert. den., 362 U.S. 988, 80 S.Ct. 1076, 4 L.Ed.2d 1021 (1960). Also, the evidence would lend meaning and strength to other testimony, for instance, that in prior meetings relating to Counts I through VIII with co-participant Knauf, along with co-defendant Rogers, Spotts was not merely passively present, which is insufficient to support a conviction, United States v. Carengella, 198 F.

2d 3 (7th Cir.), cert. den., 344 U.S. 881, 73 S.Ct. 179, 97 L.Ed. 682 (1952), but was in fact an active participant. *See* United States v. Phillips, 401 F.2d 301, 305 (7th Cir. 1968).

V. *Sufficiency of The Evidence Against Spotts*

Spotts, finally, argues that the evidence against him on Counts I through VI and VIII is insufficient as a matter of law to convict him. The record, however, contains evidence from which a jury could conclude beyond a reasonable doubt not only the essential interstate movement of the orders but also could find Spotts guilty as charged in that (a) during the period when Karen Knauf was passing forged money orders, Spotts, in concert with Rogers, developed a scheme for passing forged money orders, which scheme included Knauf as the one who would actually cash the money orders, and (b) when Knauf cashed the money orders on which Spotts and Rogers were convicted, she was acting under the direction and control of both Spotts and Rogers even though both were not at all times physically present with her. *Cf. Phillips, supra* at 307.

Accordingly, the convictions appealed from in both 72–1305 (Rogers) and 72–1306 (Spotts) are affirmed.