UNITED STATES, Appellee,

v.

Private First Class Christopher M. HORNBROOK, SSN 530–72–9638, United States Army, Appellant.

SPCM 17189.

U. S. Army Court of Military Review.

10 Sept. 1982.

A.C.M.R. 23 Apr. 1982, and *United States v. Neumann,* No. C.M. 440039, A.C.M.R. 19 Dec. 1980.

Captain Marcus C. McCarty, JAGC, argued the cause for the appellant. With him on the brief were Colonel Edward S. Adamkewicz, Jr., JAGC, and Major Joyce E. Plaut, JAGC.

Captain Thomas E. Booth, JAGC, argued the cause for the appellee. With him on the brief were Colonel R. R. Boller, JAGC, and Major John T. Edwards, JAGC.

Before FULTON, COHEN and NAUGHTON, Appellate Military Judges.

## OPINION OF THE COURT

NAUGHTON, Judge:

Tried by a military judge sitting alone as a special court-martial, the appellant was convicted, contrary to his pleas, of two specifications each of wrongful possession, transfer, and sale of marihuana in violation of Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934 (1976). He was sentenced to a bad-conduct discharge, confinement at hard labor for six months, forfeiture of $367.00 pay per month for six months, and reduction to the lowest enlisted grade. The convening authority approved the sentence but remitted the unserved portion of the sentence to confinement and deferred the unapplied forfeitures until execution of the sentence.

The appellant contends that his conviction should be reversed and a rehearing ordered because the military judge erred in denying trial defense counsel's motion to strike the testimony of the Government's primary witness when that witness invoked his Article 31, UCMJ, 10 U.S.C. § 831 (1976), rights during cross-examination.

The offenses in this case arose out of two alleged marihuana transactions between the appellant and Specialist Four Paul Jones on 4 September 1981 and 4 October 1981. Jones was a confidential informant working for the Fort Benning Drug Suppression Team, composed of special agents from the United States Army Criminal Investigation Command (usually referred to as CID agents) and military police investigators. Although the police attempted to control these transactions between the appellant and Jones, Jones was the only Government representative present when the marihuana transfers took place.

As to the first transaction, the Drug Suppression Team arranged with Jones to make a controlled purchase of marihuana from the appellant on 2 September. Jones met the appellant at the Law Enforcement Command mess hall and gave him some money supplied by the police. Jones was under surveillance during this transaction and the police photographed the transfer of funds from Jones to the appellant. No marihuana was transferred at this time so arrangements were made for the appellant and Jones to meet on 4 September. Mid-morning on 4 September Jones met the appellant at the Law Enforcement Command mess hall, but again no marihuana was transferred at that time. In the early afternoon of 4 September Jones was searched for contraband and provided with $20.00 by the police. Appellant later met

Jones at the stockade mess hall where Jones was working. They left the stockade and went to appellant's car where both were photographed by the police. They got into the car which at the time was also occupied by the appellant's wife. As the car was driven around the block by the appellant, Jones gave him the $20.00 and the appellant's wife gave Jones a bag containing marihuana and 19 capsules of alleged amphetamines. They returned to the stockade where Jones exited the car and shortly thereafter gave the police investigators the marihuana and capsules, all of which he reported had been sold to him by the appellant.

As to the second transaction, Jones met with the appellant at the Law Enforcement Command mess hall on the morning of 4 October and arranged to purchase marihuana from the appellant that evening. Appellant told Jones to come to his home located in a trailer park outside of Fort Benning. Prior to going to the appellant's home, Jones' car and person were searched for contraband, but none was found. Jones was supplied with $20.00 in marked money. Surveillance points were established by military police investigators and a CID agent around the trailer so that Jones could not depart the trailer park without meeting them. Jones went to appellant's trailer and upon entering was met by the appellant and a civilian. Appellant asked the civilian if he could accommodate Jones, whereupon the civilian handed appellant a paper sack containing several bags of marihuana. Appellant in turn handed the sack to Jones so he could choose the bag of marihuana he wanted. Jones made his selection, paid the appellant, and left the trailer and turned over a bag of marihuana to a military police investigator. Later that evening, the civilian was stopped by local police as he was driving his car a short distance from the trailer park. He was searched and found to have the marked money used in the marihuana purchase in his possession.

On cross-examination, Jones claimed his privilege against self-incrimination (U.S. Const. amend. V; Article 31, UCMJ, *supra*) in response to five of trial defense counsel's questions. The material questions and Jones' responses are as follows:

Q. Have you ever been in any trouble?
A. Yes, sir.
Q. What kind?
A. I'm under investigation.
Q. What for?
A. Larceny.
Q. Anything else?
A. (No answer)
Q. Anything else?
A. Soliciting and possession of marihuana.
Q. What time period is this alleged to have occurred?
A. I can't recall what time period it was alleged to have occurred, sir.
Q. Did it occur here at Fort Benning?
A. Yes, sir.
Q. Did it arise out of your duties over— as a cook?
A. I can't answer that on the grounds that it might incriminate me.
Q. Did it arise out of your duties over at the stockade?
A. I can't answer that on the grounds that it might incriminate myself.
Q. Is this investigation still pending?
A. Yes, sir.
Q. When did you go to Fort Ord?
A. Somewhere in the vicinity of the middle of October, I believe.
Q. Does this investigation have anything to do with your dealings with prisoners at the stockade?
A. I can't answer on the grounds that it might incriminate myself.
Q. And what specifically are you under investigation for, again?
A. Larceny and soliciting.
Q. Soliciting what?
A. Soliciting marihuana.
Q. You mean, you were trying to buy it?
A. Can't answer on the grounds that it might incriminate myself.
Q. Or trying to sell it?
A. Can't answer on the grounds that it might incriminate myself.

DC. I have no further questions, Your Honor.

Again on recross-examination, the trial defense counsel asked Jones the dates of his alleged offenses and again Jones indicated that he could not recall.

Both appellant and his wife who was also present in the trailer on the evening of 4 October denied any transfer of marihuana to Jones. Appellant acknowledged receiving money from Jones on 2 September, but stated it was for the repayment of a debt Jones owed him and not as an advanced payment for marihuana. Appellant denied giving Jones marihuana when he and Jones were driving around the block near the stockade mess hall on 4 September. On the contrary, the appellant testified that it was Jones who was trying to give the appellant and his wife marihuana. He later testified that when Jones came to his trailer on 4 October, it was Jones and a civilian that engaged in the marihuana transaction, and that he had no part, whatsoever, in that transaction. During the cross-examination of Jones, the CID agents and military police investigators, the trial defense counsel also questioned the effectiveness of the police surveillance of Jones and the number of times he was searched for contraband prior to his contacts with the appellant. The witnesses indicated that each time Jones was searched, no contraband was found, however, it was also acknowledged that Jones was not under continual surveillance once he had been searched in several instances prior to the 4 September transaction. Further, the police witnesses stated their surveillance never provided them with the opportunity to directly observe the two transactions in question.

After the prosecution rested its case, the trial defense counsel advised the military judge in his opening statement:

Your Honor, this entire case revolves around the word of four witnesses: three defense witnesses and Private Jones, as to what actually occurred in the transactions, and accordingly, during the process of our testimony, we believe that it will show that many discrepancies exist and

that's essentially what the essence of this entire case is here today and we ask that the court keep an open mind to all matters that come in. Thank you.

Prior to the defense calling its last witness on the merits, the trial defense counsel moved to strike the testimony of Specialist Jones and the following occurred between the military judge and both counsel:

DC: Your Honor, at this time, the defense would make a motion under Military Rule of Evidence 301 to strike the testimony of the government witness, Specialist Four Paul Jones.

MJ: And the basis for your motion?

DC: The basis for our motion, Your Honor, is that he invoked privileges against self-incrimination while he was on the stand.

MJ: What's the rule?

DC: The rule is 301(f)(2).

MJ: All right. The rule hasn't changed since the last time I looked at it. Do you want to be heard on the motion?

TC: Yes, Your Honor, just to the effect that the questions went to the credibility of the witness. The motion to strike is not well taken if the privilege is exercised in regard to a matter on credibility, and that is what the analysis to the rule clearly says.

MJ: Anything else?

DC: Your Honor, I would say that—I presume that Captain Smith is raising an issue to the collateralness of the issue? As to what the objection is taken to?

MJ: Yes, that's what he [sic] talking about.

DC: We would submit, Your Honor, that the privilege was invoked in regards to inquiry about a potential investigation regarding possessing of the contraband, possibly during duty hours, and certainly, Your Honor, since the case involved here is a similar nature, distinctly is beyond a collateral matter in this issue—in this case.

TC: Your Honor, a similar nature does not cross the threshold requirement that it be something other than going

to credibility and in particular, the case of *United States versus Terrell,* which is an Air Force Court of Military Review case from 1977 at 4 M.J. 720, the witness was testifying on a heroin possession case and the question was: 'Don't you use heroin?' and he stood on his Article 31 rights, and the court held that that was a collateral issue and was not a motion—a motion to strike was not well taken on that basis. We've got exactly the same situation here and merely a similar nature certainly does not show that the invocation of that privilege went to the heart of this matter and absent other evidence, the motion to strike is not well taken.

MJ: Anything else?

DC: Yes, Your Honor. As far as the particular circumstances in this case, this—the period of the investigation is alleged to have occurred the exact same time prior to Spec 4 Jones' departure from Fort Benning, which coincides with the time period in this case. We're not talking about simply bringing a matter out of thin air as to past conduct; we're talking about conduct that occurred at the exact same time. Accordingly, it's certainly not collateral in terms of time; it's certainly not collateral in terms of the issue it goes to.

MJ: Anything else?

DC: No, Your Honor.

MJ: Your motion is denied.

On this appeal, appellant contends that the questions Specialist Jones refused to answer were material to his defense in establishing Jones had an alternate source for the marihuana he obtained on 4 September 1981 and 4 October 1981; the Government contends that the questions were collateral and that, therefore, Jones' refusal to answer did not infringe appellant's Sixth Amendment rights.

 The confrontation clause of the Sixth Amendment guarantees the accused the right to cross-examine witnesses against him. *See e.g., Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974). If an accused's cross-examination is restricted by the competing Fifth Amendment right of a witness, it may be necessary to strike the direct testimony of that witness. *United States v. Rivas,* 3 M.J. 282 (C.M.A.1977); Mil.R.Evid. 301(f)(2). The test for deciding whether the direct testimony ought to be stricken by the military judge as a remedy for such a denial of cross-examination is set out in *United States v. Cardillo,* 316 F.2d 606, 611 (2d Cir.), *cert. denied,* 375 U.S. 822, 84 S.Ct. 60, 11 L.Ed.2d 55 (1963):

> Where the privilege has been invoked as to purely collateral matters, there is little danger of prejudice to the defendant and, therefore, the witness's testimony may be used against him. On the other hand, if the witness by invoking the privilege precludes inquiry into the details of his direct testimony, there may be a substantial danger of prejudice because the defense is deprived of the right to test the truth of his direct testimony and, therefore, that witness's testimony should be stricken in whole or in part. [Citations omitted.]

Our review requires that we determine whether the military judge abused his discretion in denying the trial defense counsel's motion to strike the direct testimony of Specialist Jones, *United States v. Stephens,* 492 F.2d 1367 (6th Cir. 1974), and we must consider the entire record in deciding whether the appellant has been prejudiced. *United States v. Rogers,* 475 F.2d 821 (7th Cir. 1973). The burden is upon the appellant to demonstrate that a violation of his Sixth Amendment right to cross-examine a Government witness who refuses to answer certain questions on Fifth Amendment grounds has prejudiced appellant. *Cf. United States v. Valenzuela-Bernal,* ——— U.S. ———, 102 S.Ct. 3440, 73 L.Ed.2d 1193 (1982) (accused claimed a violation of his Sixth Amendment right to compulsory process).

 An evaluation of the record leads us to the conclusion that trial defense counsel did not establish a relationship between the marihuana offenses in the appellant's case and the unspecified larceny and drug of-

fense investigation involving Jones about which he declined to answer questions on Fifth Amendment grounds. Appellant contends that the offenses which Jones was admittedly under investigation for were contemporaneous to the charged offenses, and therefore establish that Jones had an alternate source for the marihuana he states that he purchased from the appellant. Jones answered the trial defense counsel on both cross and recross-examination that he could not recall the time the offenses he was under investigation for occurred. Neither the trial defense counsel's opening statement, his cross-examination of Jones, nor his articulation to the military judge of his motion to strike provides us with more than a speculative assertion as to the materiality of trial defense counsel's questions of Jones. Trial defense counsel's questions do not lead us to the conclusion that accused's appellate counsel now asks we reach. *Cf. United States v. Nez,* 661 F.2d 1203 (10th Cir. 1981). Appellate relief can not be afforded without an adequate trial record. Mil.R.Evid. 103(a)(1) and (2). In that regard, a motion to strike testimonial evidence which is already before the factfinder should be sufficiently specific, identify the evidence objected to, and the grounds upon which the motion should be sustained. Manual for Courts-Martial, United States, 1969 (Revised edition), Appendix 18: Analysis of the 1980 Amendments to the Manual for Courts-Martial, Rule 103, at p. A18–3.

We agree with the Government that the questions phrased by the trial defense counsel to Specialist Jones related to collateral matters. *Compare United States v. Terrell,* 4 M.J. 720 (A.F.C.M.R.1977) *and United States v. Anderson,* 4 M.J. 664 (A.C.M.R. 1977) *with United States v. Colon-Atienza,* 22 U.S.C.M.A. 399, 47 C.M.R. 336 (1973). The appellant was not prejudiced by Jones' exercise of his Fifth Amendment privilege. Accordingly, the military judge's ruling on the motion to strike was correct.

The findings of guilty and the sentence are affirmed.

Senior Judge FULTON and Judge COHEN concur.