**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Ike NELSON, Defendant-Appellant.**

**No. 12686.**

United States Court of Appeals
Seventh Circuit.

Jan. 12, 1960.

R. Eugene Pincham, Chicago, Ill., Howard T. Savage, Chicago, Ill., of counsel, for appellant.

Robert Tieken, U. S. Atty., John Peter Lulinski, Asst. U. S. Atty., Chicago, Ill. (Robert N. Johnson, Asst. U. S. Atty., Chicago, Ill., of counsel), for appellee.

Before DUFFY and KNOCH, Circuit Judges, and MERCER, District Judge.

KNOCH, Circuit Judge.

Defendant, Ike Nelson, and one Dorothy Renarda [1] Webb were indicted in seven counts on charges of having, with unlawful and fraudulent intent, willfully and feloniously transported and caused to be transported in interstate commerce seven separate falsely made and forged American Express Company money orders, in violation of Title 18 U.S.C.A. § 2314. In each count, one Loretta Wilbur

1. Called Dorothy Renata Webb in the indictment.

and one Cornelius Moreno Webb are charged with aiding, abetting, counseling, advising and procuring the commission of the offense described. An eighth count charges all four persons with unlawful conspiracy to commit the offense, described, in violation of Title 18 U.S.C.A. § 371.

Dorothy Renarda Webb, Loretta Wilbur and Cornelius Moreno Webb had pleaded guilty, but had not been sentenced, when Ike Nelson was tried separately before a jury on his plea of not guilty. The jury found defendant guilty as charged in the indictment. A sentence of three years was imposed.

Defendant appeals in reliance on alleged errors in ruling on the evidence, insufficiency of the evidence to sustain the charges, and prejudicial statements of the Trial Court.

The evidence showed that on June 25, 1958, the GR branch office of the Western Union Express Company, in St. Louis, Missouri, was robbed of two books of blank American Express Company money orders. An employee of that office testified that the money orders involved here were among those stolen, and that, when taken, all were blank except for the printed portion thereof and the words "GR, St. Louis, Mo." affixed by rubber stamp.

At the trial, counsel for the government told the jury that the government did not infer that Ike Nelson was involved in the robbery and that he knew Ike Nelson did not commit the robbery.

At the end of June or the beginning of July, Ike Nelson, in Chicago, Illinois, showed a book of the stolen money order blanks to Mr. and Mrs. Webb and Loretta Wilbur. All four agreed to cash these money orders and to split the proceeds. Loretta Wilbur and the Webbs all testified that Loretta Wilbur, in the presence of defendant, Ike Nelson, filled in the handwritten portions of the face of the printed money order blanks. Loretta Wilbur testified that she inserted the figures "50" and the word "Fifty" because the printed blanks read "not payable for more than fifty dollars;" that she inserted the name "Dorothy Moore" as payee and "Wm. Moore" as sender, because Mrs. Webb's name in a prior marriage had been Moore and Mrs. Webb could provide identification for that name. Then Loretta Wilbur and the Webbs cashed the money orders at various stores.

Ike Nelson denied that he gave the money orders to any of the other defendants, or had any connection with the above described activity. He contradicted many of the statements in the testimony of the other witnesses concerning such matters as his home address and the nature and extent of his acquaintance with Loretta Wilbur and the Webbs.

Defendant argues that, even if the jury believed the testimony of the other defendants, there is no evidence that he knew the securities would be paid in New York, that he intended and caused them to be transported in interstate commerce, or that the securities were actually transported outside the state of Illinois.

Each of the money orders bears the printed legend: "American Express Company, New York, New York, agrees to transmit and pay." In our opinion this clearly indicated that the securities were payable at the American Express Company, in New York, New York. Defendant must have known that the money orders, when forged and uttered, would have to be sent across state lines to New York for collection. We can only conclude that defendant did intend and cause the money orders to be transported in interstate commerce. United States v. Sheridan, 1946, 329 U.S. 379, 391, 67 S. Ct. 332, 91 L.Ed. 359.

The money orders are each stamped "Paid, with an appropriate date inserted, AMEXCO, N. Y." On all of the money orders, except that shown in the government's Exhibit 5, the stamp is blurred and the letter "A" of "AMEXCO" is not clear. The transcript of testimony indicates that some of the witnesses, apparently misreading the rubber stamp on the money orders, said that payment had been made at "Mexico, New York." The documents speak for themselves. They

show that they were in fact paid at the American Express Company in New York, as abbreviated: "AMEXCO, N. Y.", or "MEXCO, N. Y." The special agent for the American Express Company in Chicago testified that American Express Company money orders are paid in New York. He identified the stamp quoted above and testified that such a stamp is affixed by the clearing house division of the American Express Company in New York when the money order is paid.

 Defendant contends that these securities were genuine; that they were, in fact, genuine printed money order blanks of the American Express Company. He argues that Mrs. Webb endorsed the money orders, when they were cashed at various stores, with her own former name, Dorothy Moore, never representing her signature to be that of anyone other than herself; that Loretta Wilbur's insertion of the name "Dorothy Moore" (meaning Mrs. Webb) and her insertion of the name "Wm. Moore" (which was never passed off as genuine) plus a St. Louis address, as "sender", did not constitute forgery. In support of his position, defendant cites three cases which we do not find helpful: United States v. Greever, D.C.D.C.1953, 116 F.Supp. 755; Greathouse v. United States, 4 Cir., 1948, 170 F.2d 512; and Rowley v. United States, 8 Cir., 1951, 191 F.2d 949.

Greever involved a defendant who signed fictitious names (none represented as being that of anyone but himself) to checks on a bank in which he had no account in his own name or in the fictitious names. The Court held that the proper charge was false pretenses rather than transportation of forged checks in interstate commerce. The Court said (116 F. Supp. at page 756) that it was only where reliance was placed on the *signature*, as distinguished from the *person* presenting the check, to create a valid obligation, that forgery had been committed.

Greathouse dealt with a defendant who signed his own name to checks drawn on a bank in which he had no funds. The Court held that he might undoubtedly be successfully prosecuted under some penal statute but that the charge of forgery was not sustained.

Rowley concerned travelers' checks, stolen from a bank in Iowa, with a blank line for insertion of the payee, on which defendant wrote in a fictitious name. These travelers' checks were held to be fraudulently altered to the prejudice of another's rights, and hence to constitute forged instruments under Blackstone's definition of forgery. On this definition, the defendant before us argues that no forgery was committed here because William Moore, whose name was written in as sender, was neither prejudiced nor defrauded, and was never made liable in any way.

None of these cases presents the same situation as that before us.

In addition to the insertions already described, the face of each money order in this case bears a signature purporting to be that of "L. Jans, Sub-Agent", without which the money orders could not have been cashed. In his argument, defendant assumes that this name may have already been on the blank money orders when they were stolen in St. Louis, Missouri. This contradicts the evidence of the Western Union employee who testified that the printed blanks contained no signature for agent or sub-agent, that she did not recognize the handwriting, and that there was nobody named L. Jans in the St. Louis branch office. Defendant's assumption also conflicts with the evidence of Loretta Wilbur who said she filled in the face of the blanks. The issues of credibility and conflict in testimony are solved for us by the jury's verdict. We must review the evidence in the light most favorable to the government, and must sustain the jury's verdict if there is substantial evidence to support it. Glasser v. United States, 1942, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680; United States v. Green, 7 Cir., 1957, 246 F.2d 155, 157, certiorari denied 355 U.S. 871, 78 S.Ct. 122, 2 L.Ed. 2d 76.

In re Count de Toulouse Lautrec, 7 Cir., 1900, 102 F. 878, 881, concerned

printed bonds and coupons genuine in origin, printed on authority of the corporations purporting to issue them, examples of which were innocently retained by the printers as samples and innocently given to the utterer who used them without alteration. This Court held that mere making of an instrument which would constitute forgery, if made with fraudulent intent, is not forgery until such intent appears. There the documents became forged instruments when the purpose arose to use them fraudulently.

Contrary to actual fact, the money orders before us purported to be American Express Company money orders issued on authority of the American Express Company, after receipt by its agent of the sum named. The money orders were forged instruments. After a review of the entire record, in the light of defendant's assertions respecting the rulings and comment of the Trial Court, we find no prejudicial error.

Defendant, in particular, assigns as error, cross-examination of defendant himself with respect to prior convictions. On direct examination, defendant, as a witness in his own behalf, testified that he had never been convicted of any crime of any kind. This opened the subject for cross-examination. We cannot agree with defendant that cross-examination under these circumstances with respect to prior convictions was analogous to introduction of extra-indictment offenses in the government's case-in-chief. We may review the Trial Court's exercise of discretion, in controlling the scope of cross-examination, only to determine whether that discretion has been abused. United States v. Bender, 7 Cir., 1955, 218 F.2d 869, 873, certiorari denied 349 U.S. 920, 75 S.Ct. 660, 99 L. Ed. 1253. The record shows no such abuse of discretion.

Other arguments advanced by defendant have been considered and found to be without merit.

Affirmed.