**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**James CANSLER, Defendant-Appellant.**

**No. 17399.**

United States Court of Appeals
Seventh Circuit.

Dec. 19, 1969.

Certiorari Denied April 6, 1970.
See 90 S.Ct. 1278.

Anton R. Valukas, Chicago, Ill., for defendant-appellant.

Thomas A. Foran, U. S. Atty., Michael B. Nash, Asst. U. S. Atty., Chicago, Ill., for plaintiff-appellee; John Peter Lulinski, Asst. U. S. Atty., of counsel.

Before CASTLE, Chief Judge, KNOCH, Senior Circuit Judge, and KERNER, Circuit Judge.

KERNER, Circuit Judge.

Defendant, James Cansler, was indicted on two counts for violation of 26 U.S.C. § 4705, unlawful sale of narcotics, and on two counts for violation of 21 U.S.C. § 174, possession of narcotics. A jury trial was waived and defendant was tried and found guilty on all counts. From this conviction, defendant appeals.

On November 30, 1967, Narcotics Agent Boyles and an informant, Ramirez, drove to a tavern in Waukegan, Illinois. Prior to entering the car, Ramirez was searched. The informant had previously worked with Narcotics Agent Raebel in obtaining a number of narcotics convictions in the area. At the tavern, the defendant approached the car and told Agent Boyles that he had the "stuff." The defendant entered the car and the three drove to an alley in North Chicago where the defendant and Agent Boyles left the car. The defendant sold Boyles three bags of heroin which he removed from his sock. Agent Raebel, who had followed the three in a separate car, viewed the entire transaction from a distance.

On December 8, 1967, Agent Boyles drove to the same tavern. One Roosevelt Saunders met Agent Boyles and after a discussion, Saunders went into the tavern. Saunders returned with the defendant who entered the car. Boyles and the defendant drove to another alley. Defendant sold Boyles two packages of heroin which the defendant removed from his sock. Defendant left the car and walked away. Again Agent Raebel maintained a constant surveillance.

The defendant testified in his own behalf that the narcotics came from the government's informant Ramirez and that Ramirez and Saunders hired the defendant to bargain with Boyles as to the price. As to the November 30 transaction, defendant Cansler said that he and Saunders entered the car with Agent Boyles and the informant and that they drove to a nearby alley, where he and Boyles bargained over the price. When they finally agreed, Saunders gave Boyles the narcotics. As to the transaction of December 8, Cansler testified that both he and Saunders entered the car, drove to an alley where they settled on the price and Saunders gave Boyles the narcotics. Cansler further testified that in conversation with Ramirez and Saunders prior to the transactions, he refused to handle any narcotics and agreed only to bargain with Boyles as to the price.

Petitioner contends that since he testified that the narcotics came from the informer and the government failed to produce the informer, entrapment has been established as a matter of law. The Supreme Court in Masciale v. United States, 356 U.S. 386, 78 S.Ct. 827, 2 L.Ed.2d 859 (1958), held that the failure to produce an informant when entrapment has been alleged does not entitle the defendant to an acquittal *per se*. The question of entrapment is for the trier of fact, and at most an inference may be drawn from the failure of the government to produce the informant. This court has recently reaffirmed the holding of *Masciale* in United States v.

Caro, 350 F.2d 862 (7th Cir.1965), and United States v. Draper, 411 F.2d 1106 (7th Cir. [June 17, 1969]).

The defendant relies heavily on United States v. Dillet, 265 F.Supp. 980 (S. D.N.Y.1966), and People v. Strong, 21 Ill.2d 320, 172 N.E.2d 765 (1960). In both cases, however, the court found after a careful weighing of all the evidence, including the failure of the informant to testify, that the government did not prove defendant guilty beyond a reasonable doubt. The court in *Dillet* found various inconsistencies in the evidence, and the court in *Strong* concluded that the evidence showed that all arrangements for the sale between the informant and the defendant were made prior to meeting with the agents.

Here, the testimony of the defendant that the narcotics came from the informer coupled with the failure to produce the informer at trial, was not sufficient to rebut the testimony of the two agents. Agent Raebel corroborated the testimony of Agent Boyles that Saunders was not in the car either on November 30 or December 8 as alleged by the defendant. Further, Agent Raebel testified that on November 30 he saw the defendant pass something to Agent Boyles, in contradiction to the defendant's testimony. There was sufficient evidence from which the trier of fact could conclude that defendant was guilty beyond a reasonable doubt.

■■■■ Petitioner also contends that since the government failed to have the informant available at the time of the trial, he was deprived of his right to a fair trial. The government is required to show that the informant's disappearance was not the result of its own action, Velarde-Villarreal v. United States, 354 F.2d 9 (9th Cir. 1965), and that it has made reasonable efforts to produce the informant. United States v. Clarke, 220 F.Supp. 905 (E.D.Pa.1963). Here, the F.B.I. Agent testified that he had

made various calls to government agencies located in the areas of Texas from which the informer had come and had made a personal search of the Chicago area but could not find the informer. He did not search the Waukegan area since he believed that the informer had left that area. While a more intensive search by the government would have been better, we do not think the government acted unreasonably. In addition, there was no evidence introduced indicating that the government played any part in the disappearance of the informer.

Further, the defendant did not make a demand for the production of the informer prior to trial. In a bill of particulars, the defendant requested "The names, addresses, and telephone numbers of all persons present at or observing any of the transactions for which the defendant is being prosecuted." The district court denied the request. The defendant asked whether the narcotics was supplied by the government and the government said it was not. Further, the defendant requested the production of any evidence or witnesses favorable to the defense.

The defendant contends that the trial court erred in not granting the request in the bill of particulars. The granting of a bill of particulars is in the discretion of the trial judge. Downing v. United States, 348 F.2d 594 (5th Cir. 1965). The purpose of the bill is to adequately inform a defendant as to the indictment against him and is not to supply the defendant with a list of the government's witnesses.[1] Yeargain v. United States, 314 F.2d 881 (9th Cir. 1963).

The defendant argues that all these requests taken together must be treated as a request for the production of the informant. There is evidence that the defendant knew the name of the informant yet he did not request his produc-

---

1. We find no support for the defendant in Roviaro v. United States, 353 U.S. 53, 65 n. 15, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957), since in *Roviaro* the bill of particulars was being used as a vehicle to

obtain the name and address of a specific informer, known to defendant only as "John Doe," and not a list of witnesses to the alleged crime.

tion, nor did he seek him as a defense witness. There is no evidence that the government did not act in good faith and we cannot put the burden on the government to guess what the defendant is trying to obtain. If the defendant sought the name and address of the informant, he should have asked for it directly.

■■ The defendant contends that it was prejudicial error to permit Saunders when called as a witness by the defendant to make a general assertion of his fifth amendment privilege and, instead, the court should have allowed the defendant to ask all relevant questions. Defendant claims that the informant through Saunders supplied the defendant with narcotics. In light of this, any relevant question as to the transactions here involved would have incriminated Saunders and there was no error in allowing Saunders to assert his fifth amendment privilege generally. As the Supreme Court said in Hoffman v. United States, 341 U.S. 479, 486–487, 71 S. Ct. 814, 818, 95 L.Ed. 1118 (1951):

The privilege afforded not only extends to answers that would in themselves support a conviction under a federal criminal statute but likewise embraces those which would furnish a link in the chain of evidence needed to prosecute the claimant for a federal crime. (Patricia) Blau v. United States, 340 U.S. 159, 71 S.Ct. 223, 95 L.Ed. 170 (1950). But this protection must be confined to instances where the witness has reasonable cause to apprehend danger from a direct answer. Mason v. United States, 244 U.S. 362, 365, 37 S.Ct. 621, 61 L.Ed. 1198 (1917), and cases cited. The witness is not exonerated from answering merely because he declares that in so doing he would incriminate himself—his say-so does not of itself establish the hazard of incrimination. It is for the court to say whether his silence is justified, Rogers v. United States, 340 U.S. 367, 71 S.Ct. 438, 95 L.Ed. 344 (1951), and to require him to answer if "it clearly appears to the court that he is mistaken." Temple v. Commonwealth, 75 Va. 892, 899 (1881). However, if the witness, upon interposing his claim, were required to prove the hazard in the sense in which a claim is usually required to be established in court, he would be compelled to surrender the very protection which the privilege is designed to guarantee. To sustain the privilege, it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question on an explanation of why it cannot be answered might be dangerous because injurious disclosure could result. The trial judge in appraising the claim "must be governed as much by his personal perception of the peculiarities of the case as by the facts actually in evidence." See Taft, J., in Ex parte Irvine, 74 F. 954, 960 (C.C.S.D. Ohio, 1896).

For the foregoing reasons, the judgment of the district court is affirmed.

The court is grateful to Mr. Anton Valukas for his skillful and careful handling of the defendant's case as court appointed counsel.

Affirmed.