UNITED STATES of America,
Plaintiff-Appellee,

v.

Arthur Lee JOHNSON, Defendant-
Appellant.

No. 74-1035.

United States Court of Appeals,
Seventh Circuit.

Argued May 24, 1974.

Decided Oct. 18, 1974.

Paul E. Freehling, Chicago, Ill., for defendant-appellant.

James R. Thompson, U.S. Atty., Gary L. Starkman and Jeremy D. Margolis, Asst. U.S. Attys., Chicago, Ill., for plaintiff-appellee.

Before PELL and STEVENS, Circuit Judges, and LARAMORE,* Senior Judge.

PER CURIAM.

On December 13, 1971, 367 money orders drawn on the Republic National Bank of Dallas, Texas, and a money order imprinter were stolen from a Chicago grocery store. Approximately one month later Arthur Johnson went to the apartment of Darlene Smith, displayed at least two money orders and asked if she would cash one. Johnson told Smith that he would provide her with the necessary identification and give her "something" in return. On various occasions thereafter, while riding in a car driven by Marion Lockett, Johnson withdrew some of the several $150 money orders locked in the glove compartment, filled in the blank spaces and persuaded other young women, Annie Jones and Debora Burns, to attempt cashing them.

Jones testified that either Johnson or Lockett told her that, if there were "any questions about the money order, who sent it, you know, like I could say my brother or something like that." Tr. 45. The stores approached by Jones and Burns refused to accept the money orders; when Jones returned from one of her unsuccessful ventures, the order was destroyed by either Johnson or Lockett.

On January 25, 1972, Johnson once again withdrew a $150 money order from the glove compartment, filled in the blank spaces and persuaded Annie Jones to cash it at a Chicago currency exchange. She did so and returned the proceeds to Johnson, who gave her $15 and said that Lockett "ought to have his share." Tr. 52. A few days later Jones cashed another money order at the same currency exchange, but this time at the direction of Lockett. Both money orders were identified as part of the 367 stolen from the grocery store. They were returned to the currency exchange unpaid by the Dallas bank.

There is nothing in the record indicating that either Johnson or Lockett ever legitimately purchased any of the money orders in their possession. To the contrary, Lockett testified that he obtained the securities from Danny Shears, knowing they were stolen, with the understanding that, if he were able to cash them, part of the proceeds would be given to Shears. There also was evidence from which the jury could infer that Johnson had a similar arrangement with Shears. *See* Tr. 191.

Johnson and Lockett were later indicted for violating 18 U.S.C. § 2314 [1] and

---

* Senior Judge Don N. Laramore of the United States Court of Claims is sitting by designation.

1. Section 2314 provides in relevant part:
   Whoever, with unlawful or fraudulent intent, transports in interstate or foreign commerce any falsely made, forged, altered, or counterfeited securities or tax stamps, knowing the same to have been falsely made, forged, altered, or counterfeited . . . [s]hall be fined not more than $10,000 or imprisoned not more than ten years, or both.

Count II of the indictment charged that, on or about January 25, 1972, Johnson

> did with unlawful and fraudulent intent transport and cause to be transported in interstate commerce from Chicago . . . to Dallas, Texas, a stolen and falsely made security, to wit Republic Money Order, Number A–18879034, dated January 22, 1972, knowing the same to have been stolen and falsely made; in violation of Title 18, United States Code, Section 2314.

18 U.S.C. § 371.[2] Lockett pleaded guilty and Johnson, after a jury trial, was found guilty on all counts. Johnson now appeals, raising essentially six arguments. We are not persuaded by any of these contentions, and, consequently, affirm the judgment of conviction.

## I.

According to Johnson the record indicates that, when he first obtained the money orders, a dollar amount had already been imprinted upon them, but that the spaces for a date, payee and sender's name were blank. Consequently, they were in the same form as any money order which had been legitimately purchased. When Johnson completed the securities, he provided no necessary information which was false.[3] On January 25, 1972, for example, he made the money order payable to Annie Jones, and Annie Jones, using her true name, identification and signature, cashed it. Johnson's initial contention, therefore, is that the government failed to prove that he knew the money orders had been "falsely made" within the meaning of § 2314.[4]

The words "falsely made" and "forgery," as used in § 2314, are "substantially synonymous." Greathouse v. United States, 170 F.2d 512, 514 (4th Cir. 1948); Marteney v. United States, 216 F.2d 760, 763 (10th Cir. 1954). And, as the Supreme Court suggested in Gilbert v. United States, 370 U.S. 650, 655, 82 S.Ct. 1399, 8 L.Ed.2d 750, we may assume that they refer to the common law crime of forgery. See also Greathouse, supra, 170 F.2d at 514. The scope of common law forgery was considered by this court in In re Count de Toulouse Lautrec, 102 F. 878 (7th Cir. 1900).

In *Lautrec* a printer retained as samples of his work several interest coupons, the originals of which had been validly issued in connection with certain corporate bonds. The petitioner obtained some of these samples and, although knowing that they were not genuine obligations of the issuing corporations, negotiated them. The petitioner

---

2. Section 371 provides in relevant part:

    If two or more persons conspire . . . to commit any offense against the United States . . . and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined not more than $10,000 or imprisoned not more than five years, or both.

    In Count I the government charged that Johnson conspired with Lockett and others, unknown to violate § 2314 and that they knowingly caused the transportation of Republic money orders from Chicago to Dallas. The government further charged that, as part of this conspiracy, Johnson and Lockett recruited and transported various persons to cash the money orders, that they filled in the blank securities, that they received a portion of the proceeds from the securities and that they concealed the objectives of and acts done in furtherance of the conspiracy. Finally, the government charged that the following overt acts were committed: 1) conversations between the two defendants in the vicinity of 2514 West Van Buren on or about January 23, 1972, and January 25, 1972; and 2) all acts done to effectuate the violation specified in Counts II and III.

3. Johnson did insert the name of a fictitious sender. He argues, however, that the money order was negotiable without a sender's name (the Government so stipulated at trial); thus, it was irrelevant that the name was fictitious. Johnson also believes that imprinting a dollar amount on the money orders constituted a "false making," but contends that he had no knowledge of this imprinting. We may assume *arguendo* that each of these contentions is valid.

4. In United States v. Solomon, 422 F.2d 1110 (7th Cir. 1970), cert. denied, 399 U.S. 911, 90 S.Ct. 2201, 26 L.Ed.2d 565, Judge Cummings, speaking for the court, stated:

    An integral element in the offense stated by 18 U.S.C. § 2314 is the existence of guilty intent or knowledge. . . . The defendant must have knowledge that the check involved has been forged and fraudulently made. . . . This element is also required where a conspiracy to violate Section 2314 is charged under 18 U.S.C. § 371. . . . Evidence of such knowledge may be inferred from the particular circumstances and acts and conduct of the parties . . . but it must be clear and unequivocal.

    422 F.2d at 1112 (citations omitted). *See also* United States v. Greene, 442 F.2d 1285 (10th Cir. 1971).

argued that he was not guilty of common law forgery because: 1) the coupons had been lawfully printed and retained; 2) he had obtained the coupons legitimately from a person with authority to distribute them; and 3) he was able to negotiate the coupons without altering them in any way. The court rejected this argument, concluding that forgery was committed when

> the accused adopted the otherwise innocent work of the printer for the purpose of defrauding purchasers by selling as genuine an instrument which purported to have legal efficiency, but was neither intended nor issued as such by the purported maker.

102 F. at 881. *See also Gilbert, supra,* 370 U.S. at 658, 82 S.Ct. at 1404 (where " 'falsity lies in . . . the genuineness of execution,' it is . . . forgery").[5]

Thus, the fact that Johnson did not place any false information upon the money orders or that he may not have known of any such falsification is not dispositive. *See* United States v. Law, 435 F.2d 1264, 1265–1266 (5th Cir. 1970); United States v. Franco, 413 F.2d 282, 283 (5th Cir. 1969).[6] *See also*

United States v. Nelson, 273 F.2d 459, 461–462 (7th Cir. 1960).[7] The question is whether Johnson, when he caused the actual and attempted negotiation of what appeared to be genuine obligations of the Dallas bank, knew that they were not such obligations.

In our opinion a jury could properly infer from the facts already set forth[8] that such knowledge existed. Indeed, mere possession of recently stolen property without a satisfactory explanation gives rise to a presumption that the possessor has knowledge of its stolen character.[9] Barnes v. United States, 412 U.S. 837, 93 S.Ct. 2357, 37 L.Ed.2d 380. Certainly, if Johnson knew that the money orders had been stolen, he knew that they were not genuine obligations. *Cf.* United States v. Mathews, 429 F.2d 497 (9th Cir. 1970).

II.

Johnson further contends that there was no evidence that he knew the money order would be transported in interstate commerce.[10] As the government correctly notes, however, it is well settled that such knowledge can be inferred from the markings on the face of the security. *See, e.g.,* United States v. Nel-

---

5. The jury in this case was instructed in part:

    A "falsely made security" under this section means a security falsely or ficticiously made, signed or authored, with the intent to defraud and which would be legally effective if genuine. The falsification must relate to the execution or the making of the security rather than to its contents.

6. In *Franco* the Fifth Circuit stated:

    [A] stolen blank traveler's check becomes a forged security when someone fills in the signature spaces even if he uses his own signature. This is because a traveler's check is cashed on the credit of the issuer. Since American Express had never issued these traveler's checks to anyone, the first person to fill them in, even if he used his own signature, necessarily *created forged securities* and the first negotiator of the forged securities was necessarily a forger.

    413 F.2d at 283.

7. In *Nelson* we upheld a conviction under § 2314 where the name inserted in the payee blank of a money order was the former married name of one of the defendants. The opinion does note, 273 F.2d at 461, that a ficticious agent's name also was placed upon the money order. However, the references to *Lautrec,* at 461–462, make clear that, even absent this ficticious name, the result would have been the same.

8. The evidence must, of course, be considered in the light most favorable to the government. Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680.

9. It should also be noted that Lockett, Johnson's coconspirator, admitted that he knew the money orders had been stolen. Tr. 153.

10. The evidence, of course, need only show that the interstate transportation was reasonably foreseeable by the defendant. *See* United States v. Knippenberg, 502 F.2d 1056 at 1060 (7th Cir. 1974).

son, 273 F.2d 459, 460 (7th Cir. 1960).[11] While the money orders in this case did not bear the name of any foreign state, they did contain the legend "Payable at Republic National Bank of Dallas." Notwithstanding the absence of the word "Texas" and the existence of the metropolis of Dallas City, Illinois (pop. 1,276), we believe the jury could properly infer the requisite knowledge from this legend.

### III.

Johnson's next contention is that his "scheme reached fruition" when the money orders were cashed; any subsequent interstate transportation was "fortuitous" and only "peripherally related" to any of his acts. Citing United States v. Maze, 414 U.S. 395, 94 S.Ct. 645, 38 L.Ed.2d 603, and United States v. Isaacs, 493 F.2d 1124, 1146–1149 (7th Cir. 1974), cert. denied 417 U.S. 976, 94 S.Ct. 3184, 41 L.Ed.2d 1146, Johnson argues that his conviction should be reversed. *See also* United States v. Flaxman, 495 F.2d 344, 348–349 (7th Cir. 1974); United States v. Staszcuk, 502 F.2d 875, 880–881 (7th Cir. 1974).

This argument was squarely rejected by the Supreme Court in United States v. Sheridan, 329 U.S. 379, 67 S.Ct. 332, 91 L.Ed. 359. *See also* United States v. Dixon, 339 F.2d 932 (7th Cir. 1964). Neither *Maze* nor *Isaacs* is inconsistent with *Sheridan* for neither considered § 2314.[12] That this is the critical distinction is perfectly clear from Justice Rutledge's opinion for the Court in *Sheridan See* 329 U.S. at 386–391, 67 S.Ct. 332.

### IV.

Prior to trial Johnson moved for a bill of particulars. With respect of Count I of the indictment, he sought identification of: 1) the unnamed co-conspirators who were then unknown to the grand jury; 2) the persons he transported for the purpose of cashing money orders and from whom he received a portion of the proceeds; 3) the persons who were present during those conversations which were overt acts done in furtherance of the conspiracy; and 4) any overt acts, not listed in the indictment, as to which the government intended to present evidence. With respect to Count II, he sought a description of the means of transportation in interstate commerce which he caused to be used. The district court denied the motion, and Johnson now contends that this constituted reversible error.

In support of his contention Johnson cites several district court decisions where the judge granted some of the above requests. *E. g.*, United States v. Tanner, 279 F.Supp. 457, 474 (N.D. Ill.1967); United States v. Covelli, 210 F.Supp. 589 (N.D.Ill.1962). *See also* United States v. Feinberg, 502 F.2d 1180, 1181 (7th Cir. 1974). These decisions, however, are not authority for Johnson's contention. For the question is not whether a trial court, in its discretion, may properly require production of the information sought; rather it is whether the refusal to do so constitutes a clear abuse of that discretion.[13]  *Cf.* Will v. United States, 389 U.S. 90, 88 S.Ct. 269, 19 L.Ed.2d 305; Walsh v. United States,

---

11. In *Nelson* this court stated:

 Each of the money orders bears the printed legend: "American Express Company, New York, New York, agrees to transmit and pay." In our opinion this clearly indicated that the securities were payable at the American Express Company, in New York, New York. Defendant must have known that the money orders, when forged and uttered, would have to be sent across state lines to New York for collection.

12. In *Maze* the Supreme Court dealt with the mail fraud statute, 18 U.S.C. § 1341. In

*Isaacs* the court construed the Travel Act, 18 U.S.C. § 1952. Both opinions make clear that the crucial inquiry is one of congressional intent.

13. It is, of course, well settled that the application for a bill of particulars is addressed to the discretion of the trial court and that the court's action will be reversed only upon a clear showing of abuse. Wong Tai v. United States, 273 U.S. 77, 80, 47 S. Ct. 300, 71 L.Ed. 545; United States v. Cansler, 419 F.2d 952, 954 (7th Cir. 1969), cert. denied, 397 U.S. 1029, 90 S.Ct. 1278, 25 L. Ed.2d 540.

371 F.2d 436, 437 (1st Cir. 1967), cert. denied, 387 U.S. 947, 87 S.Ct. 2083, 18 L.Ed.2d 1335. Johnson has failed to call our attention to any authority establishing that rulings similar to the court's in this case constituted such an abuse.[14]

▆▆▆▆▆ Such an abuse will be found only if the defendant was somehow prejudiced by the court's action. Wong Tai v. United States, 273 U.S. 77, 82, 47 S. Ct. 300, 71 L.Ed. 545; United States v. White, 370 F.2d 559, 559–560 (7th Cir. 1966). Although Johnson has claimed prejudice, we find nothing in the record to support this claim.[15] Indeed, as the district court correctly concluded, the indictment sufficiently informed Johnson of the nature of the charges.[16] *Compare* United States v. Micele, 327 F.2d 222, 225–226 (7th Cir. 1964), cert. denied, 377 U.S. 952, 84 S.Ct. 1627, 12 L.Ed.2d 496. Furthermore, Johnson was "provided with information as to the alleged co-conspirators . . . and . . . the alleged overt acts" at some point before trial, Tr. 129, *compare* United States v. Salazar, 485 F.2d 1272, 1277–1278 (2d Cir. 1973), Williams v. United States, 289 F.2d 598, 601 (9th Cir. 1961), and he stipulated as to the means of interstate commerce used. Tr. 73–74. Finally, the evidence actually adduced at trial could reasonably have been anticipated from a reading of the indictment. *Compare* Downing v. United States, 348 F.2d 594, 599 n. 7 (5th Cir. 1965), cert. denied, 382 U.S. 901, 86 S.Ct. 235, 15 L. Ed.2d 155.

▆▆▆▆ Johnson, of course, asserts that the "testimony of every single government witness came as a complete surprise." His contention, however, is really no more than that he was uncertain as to precisely whom the government would call as witnesses and to precisely what they would testify. It is well settled that a bill of particulars cannot be used to obtain a list of the government's witnesses, United States v. Cansler, 419 F.2d 952, 954 (7th Cir. 1969), cert. denied, 397 U.S. 1029, 90 S.Ct. 1278, 25 L.Ed.2d 540, or evidentiary detail. See authority cited in 1 C. Wright, Federal Practice and Procedure § 129, at 286 & n. 48 (1969). And, as we concluded in United States v. Wells, 387 F.2d 807 (7th Cir. 1967):

> [E]very denial of a defendant's request for a bill of particulars may in some measure make the preparation of his defense more onerous. But a demonstration of this generalized kind of prejudice is insufficient to override the broad discretionary power vested in a district court with respect to such requests. If only a generalized showing of prejudice were sufficient, perhaps the defendant would always be entitled to a bill of particulars. Although the law of discovery in criminal cases has recently been liberalized, that development has yet to materialize.

387 F.2d at 808.

### V.

▆▆▆ Johnson's penultimate contention is that the district court unconstitutionally interfered with the presentation of his case by subjecting his only witness, Marion Lockett, to "scathing cross-examination." We have examined the court's questioning of Lockett and find nothing "scathing" or improper about it. Furthermore, the questioning came outside the presence of the jury

14. Indeed, some contrary authority exists. *See, e.g.*, United States v. Gray, 464 F.2d 632, 635 (1972), and Pines v. United States, 123 F.2d 825, 827–828 (1941), where the Eighth Circuit held that it was not an abuse of discretion to deny a request similar to the one made with respect to Count II.

15. In United States v. Wells, 387 F.2d 807, 808 (7th Cir. 1967), this court stated that a trial judge must "articulate in terms that

appear in the record the reason for exercising his discretion in denying a request for a bill of particulars. . . ." Johnson contends that the failure of the trial judge to do so in this case constitutes reversible error. In *Wells*, however, the court made clear that the mere failure to articulate a rationale is not by itself a ground for reversal. *See* 387 F.2d at 808.

16. See notes 1 and 2 *supra*.

and after Johnson had rested his case. Johnson makes no claim that, if the court had not "cross-examined" Lockett, he could or would have called Lockett in surrebuttal. Under these circumstances, there clearly was no interference with Johnson's defense.

Prior to questioning Lockett and in the presence of the jury, the court did direct defense counsel: "Tell your witness [Lockett] to stay available, will you, please?" Tr. 169. Johnson's related contention that this remark somehow demeaned Lockett in the eyes of the jury and thereby prejudiced his· case can safely be termed frivolous.

### VI.

Finally, Johnson argues that the district court erred in refusing to give the following instruction:[17]

> Neither association with conspirators nor knowledge of illegal activity constitutes proof of participation in a conspiracy.

This instruction, taken from dicta in Roberts v. United States, 416 F.2d 1216, 1220 (5th Cir. 1969), is a correct statement of law, but would be somewhat misleading to a jury.[18] While the abovementioned conduct does not, by itself, constitute proof of participation in a conspiracy, it does constitute some evidence of such participation. Indeed, knowledge of the illegal activity is an element of the crime of conspiracy. *See* United States v. Hickey, 360 F.2d 127, 138 (7th Cir. 1966), cert. denied, 385 U. S. 928, 87 S.Ct. 284, 17 L.Ed.2d 210.

Moreover, the district court did instruct the jury that:

> A mere similarity of conduct among various persons and the fact that they may have associated and assembled to-

gether and discussed common aims and interests does not necessarily establish proof of the existence of a conspiracy. . . . [T]he evidence in the case must show beyond a reasonable doubt in order to establish proof that a conspiracy existed . . . that the members in some way or manner or by some contrivances either positively or tacitly came to some kind of a mutual understanding to try to accomplish a common and unlawful plan.

Tr. 235. Since the substance of Johnson's proposed instruction is adequately contained in the above instruction, the court's refusal was not error. *See* United States v. Fellabaum, 408 F.2d 220, 227–228 (7th Cir. 1969), cert. denied, 396 U.S. 858, 90 S.Ct. 125, 24 L.Ed.2d 109.

The judgment of conviction is therefore

Affirmed.

---

17. It should be noted that Johnson has failed to call our attention to the point in the record where he objected to this refusal. Fed.R.Crim.P. 30 provides in part: "No party may assign as error any portion of the charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict. . . . "

18. As the Second Circuit stated in United States v. Lease, 346 F.2d 696 (1965):

> It is well settled that "[a] party cannot claim error in the refusal to give a requested instruction which is not entirely correct, or which it is not possible to give without qualification, or which is so framed as to be capable of being misunderstood.

346 F.2d at 702, *quoting*, Cherry v. Stedman, 259 F.2d 774, 777–778 (8th Cir. 1958).