UNITED STATES of America, Plaintiff,

v.

Gary M. GAVRAN and Richard W. Ehrlich, Defendants.

No. 85–CR–77.

United States District Court,
E.D. Wisconsin.

Oct. 24, 1985.

As Amended Oct. 29, 1985.

R. Jeffrey Wagner, Asst. U.S. Atty., Milwaukee, Wis., for plaintiff.

Jeffrey A. Kaufman, Milwaukee, Wis., for defendant Gavran.

Janice A. Rhodes, Milwaukee, Wis., for defendant Ehrlich.

## DECISION AND ORDER

WARREN, District Judge.

On August 30, 1985, Magistrate Robert L. Bittner filed a Memorandum and Order recommending denial or denial in part of numerous motions filed by defendant Richard Ehrlich. The Magistrate denied Ehrlich's motion for Jencks Act materials; denied Ehrlich's motion for production of grand jury minutes; denied Ehrlich's motion to compel production of agency documents; denied in part Ehrlich's motion for a bill of particulars; and denied Ehrlich's motion for severance. A supplementary order was issued on September 3, 1985, correcting two clerical errors in the original memorandum.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 13.02(b), Ehrlich appeals from the Magistrate's Memorandum and Order dated August 30, 1985, as corrected.

## BACKGROUND

Richard Ehrlich is charged with eight counts of mail fraud (18 U.S.C. § 1341) and twelve counts of wire fraud (18 U.S.C. § 1343), either on a theory that he directly violated those provisions or that he acted as an aider and abettor (18 U.S.C. § 2). The charges stem from Ehrlich's work as a contractor specializing in clean-up and repair of damaged properties. Ehrlich has done a substantial amount of business on insurance losses generated by fires, water damage, and the like. He has worked for the insureds of numerous insurance companies, including Fireman's Fund Insurance Companies.

Richard Ehrlich is charged in all counts with one co-defendant, Gary Gavran. Gavran is a former insurance adjuster for Fireman's Fund. As an employee of Fireman's Fund, Gavran supervised the repair of losses suffered by Fireman's Fund's insureds, evaluated the work that needed to be done and oversaw the charges made by firms doing the restoration work.

The government charges that Gavran and Ehrlich concocted a two-fold scheme: (1) to defraud Fireman's Fund of Gavran's honest and faithful services; and (2) to obtain money and property from Fireman's Fund by means of false representation. Over a five-year period from December 24, 1979 to February 9, 1984, Gavran allegedly took "kick-backs" from Ehrlich and diverted restoration work to him. Gavran supposedly approved payment of Ehrlich's bills containing charges for work never performed, multiple charges for the same work, charges for work not authorized under the insurance policy, and charges in excess of prevailing rates. Additionally, as part of the scheme to defraud, Gavran allegedly approved payments to Ehrlich for work done under corporate names other than "Ehrlich Construction."

## DISCUSSION

### I. Jencks Act Material

Ehrlich seeks a copy of a document termed a "special agent's report" pursuant to the provisions of the Jencks Act, 18 U.S.C. § 3500. Ehrlich asserts that the Magistrate erred in failing to order the government to turn over this report. The government declines to furnish the special agent's report considering it to be an internal government memorandum not required to be disclosed by the Jencks Act. Furthermore, the government represents that it is unaware of any such special agent's report in this case.

The Magistrate refused to order the government to furnish the special agent's report prior to the agent's testifying at trial. Section 3500(a) of Title 18 states:

> in any criminal prosecution brought by the United States, no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) shall be the subject of subpoena, discovery, or inspection until said witness has testified on direct examination in the trial of the case.

Ehrlich cites no authority which indicates that the government should be ordered to produce the report before trial. The Court agrees with the Magistrate's determination that delaying the government's disclosure of a single report until the time of trial will not result in "substantial delays." *Magistrate's Memorandum and Order* at 14 (August 30, 1985). Accordingly, the Magistrate's decision to deny Ehrlich's motion for discovery of the special agent's report is AFFIRMED.

### II. Grand Jury Minutes

Ehrlich seeks disclosure of the grand jury transcripts in this prosecution to determine if the government presented exculpatory evidence to the grand jury. Ehrlich asserts that there exists evidence that he consulted with an accountant, an attorney and other professionals regarding the legality of giving commissions to Gavran and that these persons considered such a

scheme to be legal. Such evidence, Ehrlich contends, tends to negate his criminal intent and should have therefore been presented to the grand jury. The government responds by asserting that exculpatory evidence concerning Ehrlich's seeking advice of counsel does not rise to the level of "clearly negating" his guilt which would require its disclosure to the grand jury. Moreover, the government contends that its affidavit moots this issue. This affidavit states that the grand jury was presented with information that "at one point in time [defendant] had spoken with an attorney generally regarding payment of money to co-defendant Gavran and that the attorney had advised him that it might be unethical but it wasn't illegal."

In denying Ehrlich's motion to inspect the grand jury minutes, the Magistrate adopted his reasoning used in denying "the virtually identical motion of Gavran's." *Magistrate's Memorandum and Order* at 17 (August 30, 1985). This reasoning was that the defendant made no showing of "particularized need" for disclosing the transcripts and evidence showing that the defendant consulted with an attorney regarding his business relationship with Gavran does not "clearly negate" his guilt. *Id.* at 13, 17.

In determining whether to disclose the minutes of the grand jury proceedings, the district court "must exercise substantial discretion, weighing the need for secrecy against the need for disclosure of specified documents and testimony occurring before the grand jury." *United States v. Lisinski*, 728 F.2d 887, 893–94 (7th Cir. 1984). Disclosure of these proceedings "will be had only upon demonstration by the party seeking disclosure of a 'compelling necessity' or 'a particularized need'." *Id.*. Finally, the proper procedure is for the district court judge to inspect the grand jury transcripts *in camera* if the Court determines that the allegedly exculpatory evidence in the government's possession "clearly negates" his guilt. *United States v. Edelson*, 581 F.2d 1290, 1292 (7th Cir. 1978) (proper procedure for the district judge to examine the minutes *in camera* and determine whether there was prosecutorial misconduct); *United States v. Flomenhoft*, 714 F.2d 708, 712 (7th Cir.1983), *cert. denied*, 465 U.S. 1068, 104 S.Ct. 1420, 79 L.Ed.2d 745 (1984) (Seventh Circuit adopts the "clearly negates" standard).

In essence, this Court must employ a two-step review process. First, the Court will determine whether the exculpatory evidence in the government's possession during the grand jury proceedings was of a type tending to clearly negate Ehrlich's guilt. Second, if the evidence possesses such a characteristic, the Court will examine the grand jury minutes *in camera* to determine whether the government fulfilled its obligation to present the exculpatory evidence to the grand jury.

Ehrlich proffers the following exculpatory evidence: (1) an FBI report containing a statement by Gary Forseth, Ehrlich's former employee, that Ehrlich consulted with an attorney regarding the legality of giving kickbacks to Gavran and that Ehrlich was advised that such action was not illegal; (2) affidavits from Ehrlich, Calene Ehrlich and Juanita Ehrlich stating that Ehrlich was advised by his attorneys that his dealings with Gavran were not illegal; (3) Ehrlich's statement in his affidavit that his accountant, Carl Nickel, advised that his dealings with Gavran were legal and tax deductible; and (4) a letter to Nickel, from Nickel's attorney stating, *inter alia*, that "there is no present Wisconsin Criminal Law prohibiting 'commercial kickbacks'."

The affidavits of defendant, Calene Ehrlich and Juanita Ehrlich were prepared for a related civil proceeding. Ehrlich does not assert that during the grand jury proceedings, the government possessed the letter to Carl Nickel from Nickel's attorney. The only exculpatory evidence that the government possessed during the grand jury proceedings was Forseth's statement contained in the FBI report.

The Court first notes that the "clearly negates" standard for determining whether exculpatory evidence must be disclosed to the grand jury is quite high. The

concern is that "[i]f prosecutors were required to present what was in essence the target's defense, then the grand jury process would be distorted into a second trial on the merits." *United States v. Dorfman,* 532 F.Supp. 1118, 1132 (N.D.Ill.1981). Another concern is the difficulty in determining what evidence is exculpatory. *Id.* The desired effect of the "clearly negates" test is to "eliminate most of the problems involved with having to determine what might be considered exculpatory in the abstract, while still not permitting prosecutors to undermine completely the grand jury's function as a check on prosecutorial power." *Id.* at 1133.

■ The present case's exculpatory evidence concerns Forseth's statement that Ehrlich consulted with an attorney regarding his business dealings with Gavran and was advised that these business dealings were not illegal. The pertinent Devitt and Blackmar jury instruction states:

§ 14.12 **Action on Advice of Counsel**

The defendant claims that he is not guilty of willful wrongdoing because he acted on the basis of advice from his attorney.

If the defendant before taking any action sought the advice of an attorney whom he considered competent, in good faith and for the purpose of securing advice on the lawfulness of his possible future conduct, and made a full and accurate report to his attorney of all material facts of which he has the means of knowledge, and acted strictly in accordance with the advice of his attorney given following his full report, then the defendant would not be willfully doing wrong in doing (omitting) something the law forbids (requires), as that term is used in these instructions.

Whether the defendant acted in good faith for the purpose of seeking guidance as to questions about which he was in doubt, and whether he made a full and complete report to his attorney, and whether he acted strictly in accordance with the advice received, are questions for you to determine.

E. Devitt and C. Blackmar, *Federal Jury Practice and Instructions* § 14.12 (1977).

The Court finds that Forseth's statement regarding Ehrlich's seeking advice of counsel does not rise to the level of exculpatory evidence clearly negating Ehrlich's guilt. Rather, it is evidence supporting an affirmative defense of reliance on the advice of counsel which Ehrlich may proffer at trial. Consequently, there is no need for the Court to review the grand jury minutes *in camera.* The Magistrate's denial of Ehrlich's motion to inspect the grand jury minutes is AFFIRMED.

**III. Production of Agency Documents**

■ Pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, Ehrlich moves for an order requiring the government to produce all documents in the possession of "any agency of the United States pertaining to the defendant, the institution of this prosecution, and Fireman's Fund." Alternatively, Ehrlich seeks an order requiring the government to file with the Court a detailed index of all documents concerning the aforementioned matters possessed by government agencies, and FOIA exemptions claimed for any documents withheld.

The Magistrate denied this motion finding that the district court's holding in *United States v. Wahlin,* 384 F.Supp. 43 (W.D. Wis.1974) (C.J. Reynolds) did not govern the present case. *Wahlin* concerned an accused's attempts to obtain IRS private letter rulings to prepare for defending against criminal charges. The government's position in *Wahlin* was that it was necessary for the defendant to commence an independent civil suit under the FOIA for disclosure of the desired information. The *Wahlin* court determined that "the applicability of the Freedom of Information Act to specific documents or information sought can be determined by the court in a discovery motion filed in a pending criminal case as easily as it can be determined in an independent civil suit." 384 F.Supp. at 47. Accordingly, the *Wahlin* court ordered the

government to produce the requested private letter rulings. *Id.* at 48.

The Magistrate identified two critical differences between the instant case and *Wahlin.* First, here the government is not demanding that Ehrlich commence a separate civil action to obtain the desired documents; rather, it has forwarded the defendant's request to the Department of Justice for processing. Second, unlike the request in *Wahlin* for IRS private letter rulings, Ehrlich requests unspecified information rendering it impossible for a court to determine whether any of the materials sought are exempt from disclosure under the FOIA or exempt from discovery under Rule 16 of the Federal Rules of Criminal Procedure. The Magistrate found these differences dispositive and accordingly denied Ehrlich's motion. *Magistrate's Memorandum and Order* at 19 (August 30, 1985).

In appealing the Magistrate's decision, Ehrlich has reiterated his arguments previously made to the Magistrate. The government asserts that it is aware of no documents possessed by any agency which fall within Ehrlich's broad, unspecified request. This Court, like the Magistrate, is stymied as to how it can apply the *Wahlin* court's mandate of expedited determination of whether "specific documents or information sought" should be disclosed, to the present case's general request for information possessed by any governmental agency. Considering the character of Ehrlich's request, the government's present processing of the request is proper. If the processing has not been completed by the time of trial, Ehrlich may seek a continuance asserting that the information sought is necessary for his defense. Accordingly, the Magistrate's denial of Ehrlich's motion to compel production of agency documents is AFFIRMED.

### IV. Bill of Particulars: Parts 1–7, 12

Ehrlich appeals the Magistrate's partial denial of his twelve-part motion for a bill of particulars. The Magistrate granted Ehrlich's motion as to Parts 8–11 requesting

specification of the instances where Ehrlich allegedly charged for work: unperformed; multiple times; at a price exceeding the prevailing rates; and at a price not authorized by a particular insurance policy's terms. The Magistrate reasoned that this requested information was necessary for Ehrlich to analyze the various bills provided by the government pursuant to its "open file policy." *Magistrate's Memorandum and Order* at 21 (August 30, 1985). Parts 1–7 and 12 of Ehrlich's request were denied by the Magistrate. Part 1 requests specification of the false and fraudulent pretenses, representations and promises to further the scheme to defraud Fireman's Fund. The Magistrate found that these items were "set forth in sufficient detail in the indictment to enable the defendant to prepare his defense." *Id.* at 20.

Parts 2–7 of Ehrlich's request seek specification of the manner in which (1) Gavran did not honestly and faithfully perform his services as an employee; (2) Ehrlich caused the creation of various construction corporations which received restoration work from Fireman's Fund; and (3) Ehrlich caused restoration work on insurance losses reported on Fireman's Fund insurance policies to be awarded to his created construction companies. The Magistrate denied each of these requests finding that they attempted to obtain evidentiary detail to which the defendant was not entitled. *Id.*

Part 12 of Ehrlich's request asks the government to specify the occasions where Ehrlich knew the particular insurance policy's terms. The Magistrate denied the request finding that this information was "more readily obtained by the defendant than the government, and moreover, if known by the government, it is evidentiary detail which the defendant is not entitled to acquire by means of a bill of particulars." *Id.* at 21–22.

On appeal, Ehrlich asserts that the Magistrate should have granted his motion for a bill of particulars in its entirety because the requests denied by the Magistrate are similar to those that he granted. Further,

Ehrlich contends that the denied requests seek specification of areas where the government has numerous avenues of proof open to it and that he will be forced to guess how the government is going to proceed at trial.

■■■ This Court does not find the Magistrate's findings to be clearly erroneous or contrary to law. The thirty-page, twenty-nine count indictment sufficiently details Ehrlich's alleged scheme to defraud Fireman's Fund. Ehrlich's requests granted by the Magistrate concern information necessary for understanding the items obtained pursuant to the government's "open file policy." Consequently, these requests are necessary for understanding the theory of the government's case. However, the requests denied by the Magistrate do not seek to ascertain the government's theory. Rather, they seek evidentiary detail which cannot be discovered with a bill of particulars. *United States v. Johnson*, 504 F.2d 622, 627 (7th Cir.1974). A defendant is not entitled to know all the evidence that the government intends to produce, but rather, only the theory of the government's case. The Magistrate's ruling sufficiently ensures that this was done. Accordingly, the Magistrate's partial denial of Ehrlich's motion for a bill of particulars is AFFIRMED.

### V. Severance

■■■ Ehrlich moved for severance from his co-defendant Gary Gavran on two grounds: First, Ehrlich claimed that he would suffer prejudice in a joint trial because of the disparity in the nature and quantity of the government's proof as between the case against him and the case against Gavran; and second, Ehrlich claimed that he would suffer prejudice in a joint trial with Gavran because his defense was completely antagonistic to Gavran's defense. The Magistrate denied this motion. Regarding Ehrlich's first ground for the motion, the Magistrate determined that "instructions directing the jury to assess each defendant's guilt or innocence solely on the basis of the evidence admissible against him would be effective to prevent evidentiary spillover." *Magistrate's Memorandum and Order* at 23 (August 30, 1985). As to Ehrlich's second ground, the Magistrate found that Ehrlich "has alerted the Court to the potentiality of mutually antagonistic defenses, he has not established them as an actuality.... Accordingly, at this juncture of the case, the defendant has not met his burden of showing that he will be prejudice [sic] by joinder so that in effect he will be denied a constitutionally fair trial." *Id.* at 24–25. On appeal, Ehrlich reasserts both grounds for his severance motion.

As stated by the Magistrate:

A trial court's ruling on a Rule 14 motion for severance is committed to its sound discretion. *United States v. Hattaway*, 740 F.2d 1419 (7th Cir.), *cert. denied*, —— U.S. ——, 105 S.Ct. 599 [83 L.Ed.2d 373] (1984). In exercising its discretion, the Court should balance the interests of the defendant against the needs of judicial economy. *United States v. Tedesco*, 7236 [726] F.2d 1216, 1219 (7th Cir.1984). A strong judicial policy favors joint trials where largely the same evidence would be admitted in separate trials for each defendant. *United States v. Hattaway*, 740 F.2d at 1424; *United States v. Burton*, 724 F.2d 1283, 1286 (7th Cir.1984); *United States v. McPartlin*, 595 F.2d 1321, 1333 (7th Cir.), *cert. denied*, 444 U.S. 833 [100 S.Ct. 65, 62 L.Ed.2d 43] (1979). A defendant must show that without severance he would be so prejudiced that, in effect, he would be denied a constitutionally fair trial. *United States v. Alpern*, 564 F.2d 755, 758 (7th Cir.1977).

*Magistrate's Memorandum and Order* at 22–23 (August 30, 1985).

The Court agrees with the Magistrate's decision that a jury instruction will cure any prejudice flowing to Ehrlich because of evidence admissible against Gavran. Essentially, Ehrlich asserts that he will be prejudiced by evidence that Gavran was an employee of Fireman's Fund and was expected to be loyal and to follow their policies, whereas Ehrlich was not in a similar

position. Limiting jury instructions will sufficiently protect against this small possibility of prejudice. *See United States v. Moschiano,* 695 F.2d 236, 247 (7th Cir. 1982); *United States v. Papia,* 560 F.2d 827, 837 (7th Cir.1977).

Regarding Ehrlich's second ground for his severance motion, Ehrlich contends that he and Gavran have mutually antagonistic defenses. Counsels' affidavits show that Gavran will contend that Ehrlich offered him commissions, while Ehrlich will contend that Gavran demanded kickbacks as a condition of doing business with Fireman's Fund. Severance based on inconsistent defenses may be granted *only* if the defenses conflict to the point of being irreconcilable and mutually exclusive. *United States v. Hasting,* 739 F.2d 1269, 1274 (7th Cir.1984); *cert. denied,* —— U.S. ——, 105 S.Ct. 1199–1200, 84 L.Ed.2d 343 (1985). A defense is not mutually antagonistic if the defenses can all be accepted by the jury. *United States v. Petullo,* 709 F.2d 1178, 1182 (7th Cir.1983).

The defendants' stated defenses are not mutually antagonistic to a degree requiring severance. The jury could find that Ehrlich did not intend to defraud Fireman's Fund even if it accepts Gavran's defense that Ehrlich offered him commissions. The jury could find that Ehrlich's actions were pursuant to a business strategy, the legality of which was approved by his attorney and accountant. The defenses are therefore not mutually antagonistic. Accordingly, the Magistrate's denial of Ehrlich's motion for severance is AFFIRMED.

In sum, the Magistrate's Memorandum and Order of August 30, 1985, is AFFIRMED in its entirety.